**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DENISE ARNOLD, BLAIRE BROWN, and SANDRE WILSON, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

TARGET CORPORATION,

Defendant.

Case No. 1:24-cv-04452

**JURY TRIAL DEMANDED**

**Judge Jeremy C. Daniel.**
**Magistrate Keri L. Holleb Hotaling**

# <u>DEFENDANT TARGET CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

Justin O. Kay
justin.kay@faegredrinker.com
Ambria D. Mahomes
ambria.mahomes@faegredrinker.com
**Faegre Drinker Biddle & Reath LLP**
320 South Canal Street, Suite 3300
Chicago, Illinois 60606-5707
Telephone: +1 312.569.1000
Facsimile: +1 312.569.3000

*Counsel for Defendant Target Corporation*

# TABLE OF CONTENTS

**Page**


INTRODUCTION .... 1

SUMMARY OF THE COMPLAINT .... 1

ARGUMENT .... 3

I. Plaintiffs' Sources Do Not Support Plaintiffs' Assertions That Target is Using Facial Recognition Technology. .... 4

II. Plaintiffs Cannot Rely on Others' Conclusory Assertions that Target is Using Facial Recognition Technology. .... 11

III. Plaintiffs' Section 15(d) Claims are Contradicted by Their Own Allegations. .... 14

CONCLUSION .... 15

CERTIFICATE OF SERVICE .... 16

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*,
499 F.3d 663 (7th Cir. 2007) ....................3

*Allen v. Brown Advisory, LLC*,
41 F.4th 843 (7th Cir. 2022) ....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3

*Bridges v. Blackstone Grp., Inc.*,
No. 21-CV-1091-DWD, 2022 WL 2643968 (S.D. Ill. July 8, 2022), *aff'd sub nom. Bridges v. Blackstone, Inc.*, 66 F.4th 687 (7th Cir. 2023) ....................8

*Bridges v. Blackstone, Inc.*,
66 F.4th 687 (7th Cir. 2023) ....................7, 8, 9

*Forrest v. Universal Sav. Bank, F.A.*,
507 F.3d 540 (7th Cir. 2007) ....................8

*Phillips v. Prudential Ins. Co. of Am.*,
714 F.3d 1017 (7th Cir. 2013) ....................9

*Walker v. S.W.I.F.T. SCRL*,
517 F. Supp. 2d 801 (E.D. Va. 2007) ....................12, 13

**Statutes, Rules & Regulations**

740 ILCS 14/1 *et seq.* ....................1

740 ILCS 14/15(d) ....................12

Fed. R. Civ. P. 8 ....................3

**Other Authorities**

An Unexpected Career: Target's Forensic Services Laboratory (Feb 15, 2012),
https://corporate.target.com/news-features/article/2012/02/an-unexpected-career-target-forensic-services-labo ....................7

Ashley Palya, *CAM YOU NOT? 'Can Target be next?' ask shoppers after Rite Aid blasted over anti-theft measure that 'hit innocent customers,'* U.S. SUN (Dec. 21, 2023), https://www.the-sun.com/news/9920418/shoppers-want-target-facial-recognition-cameras-banned-rite-aid/ ....................11

Bob Woods, *How America's biggest retailers plan to use technology to catch organized retail theft*, CNBC (Aug. 1, 2023), https://www.cnbc.com/2023/07/29/how-americas-biggest-retailers-will-use-tech-to-catch-retail-theft.html ....................4

CBS Evening News, How Target retailer helps catch criminals outside its stores (Apr. 8, 2018), https://www.youtube.com/watch?v=y1HUhmawV8I....................6

Dan Kahan, *Why Target is the Worst Store to Shoplift From*, PAYPATH (Apr. 25, 2024), https://www.paypath.com/small-business/why-target-is-the-worst-store-to-shoplift-from....................5

Elsa Buchanan, *NO ESCAPE Target uses 4 security hacks to make sure they catch every thief - how the retailer knows you're stealing*, U.S. SUN (July 29, 2022), https://www.the-sun.com/lifestyle/5877078/target-stores-security-hacks-shoplifting/ ....................11

*How does Target identify people on camera after the fact of shoplifting? They issued a warrant for me and that video shows that it was not me, yet they still arrested me.* QUORA, available at https://www.quora.com/How-does-Target-know-if-you-ve-shoplifted (last visited June 7, 2024)....................6, 11

Jenn Abelson, "Target goes high-tech to stop increasingly savvy thieves: Technology drives Target's tough-minded antitheft operation," BOSTON GLOBE (Dec. 10, 2011), available at https://www.bostonglobe.com/metro/2011/12/10/target-goes-high-tech-stop-increasingly-savvy-thieves/UFF89UlSQ59nnS8dhidcDP/story.html ....................5

Jodie Kautt, *Applying Cyber Principles to Combatting Organized Retail Crime* (Aug. 29, 2023), https://tech.target.com/blog/cybersecurity-combatting-organized-retail-crime....................6

Parks Kugle, *Target Builds Months-Long Case Against Shoplifter*, The DAILY DOT (May 12, 2023), available at https://www.dailydot.com/news/target-builds-monthslong-case-against-shoplifter/ ....................6

Shoshy Ciment & Mary Meisenzahl, *Target Employees Say Store Doesn't Stop All Shoplifters*, BUSINESS INSIDER (Dec. 9, 2020), https://www.businessinsider.com/target-employees-say-store-doesnt-stop-all-shoplifters-2020-12 ....................6

Tangie Mitchell, *Ex-Target Worker: Why Target 'Lets' You Get Away with Shoplifting*, THE DAILY DOT (Feb. 14, 2024), https://www.dailydot.com/news/target-grand-larceny-psa/ ....................11

Target Press Release, Target Corporation Reports First Quarter Earnings (May 17, 2023), *available at* https://corporate.target.com/press/release/2023/05/target-corporation-reports-first-quarter-earnings ....................7

## INTRODUCTION

Plaintiffs Denise Arnold, Blaire Brown, Sandre Wilson, and Lindsay Schumm (collectively "Plaintiffs") assert that Target Corporation ("Target" or "Defendant") uses facial recognition technology to surveil guests and collect their biometric information in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"). This is untrue, discovery would show it is untrue, and Plaintiffs' claims would fail eventually.

Target explained these shortcomings to Plaintiffs Arnold, Brown, and Wilson well in advance of Target filing its first motion to dismiss on August 1st. *See* ECF No. 11 and ECF No. 13, Ex. A. Target also explained that another group of experienced plaintiffs' class action firms had abandoned similar unsupported allegations after the same disclosures from Target and that continued pursuit of a meritless case would implicate Rule 11. Since then, another group of experienced plaintiffs' firms has also abandoned their case after Target explained that it does not use facial recognition technology to surveil its guests. *See* Ex. 1. Plaintiffs elected not only to continue their case but to add a plaintiff and file a First Amended Complaint ("FAC") on August 21, 2024 (*See* ECF No. 15), which repeats the same errors as the first iteration. As discussed below, the FAC (a redline comparison is attached hereto as Ex. 2) does not fix the many shortcomings of that prior iteration. This case still should be dismissed.

## SUMMARY OF THE COMPLAINT

Target is a retailer—one of the largest in the United States. *See* FAC ¶ 13. Plaintiffs are Target shoppers who reside in Illinois and claim to have visited Target locations in Illinois "dozens of times" over the past five years. *Id.* ¶¶ 8-12. Plaintiffs allege that during those dozens of visits, Target has been violating BIPA by collecting "scans of facial geometry" of Plaintiffs and of "thousands of individuals, without their knowledge or consent, through the use of security cameras

and video surveillance systems throughout its stores in Illinois," including in its self-checkout lanes. *Id.* ¶ 5.

Plaintiffs assert that Target violated BIPA because Target has not informed guests in writing of this collection, has not obtained written releases from guests for this collection, has not developed or shared with guests any policy regarding this collection, and is retaining this collected information for longer than BIPA permits. *Id.* ¶¶ 30-34. As a result, Plaintiffs assert three counts against Target: Count I for violating Section 15(a) of BIPA by allegedly failing to develop and make available to the public a written policy regarding the collection, use, and destruction of biometrics (*id.* ¶¶ 65-71); Count II for violating Section 15(b) of BIPA by allegedly failing to obtain written consent in the form required by BIPA in advance of collecting biometrics (*id.* ¶¶ 72-79); and Count III for violating Section 15(d) of BIPA for disclosing Plaintiffs' biometrics to third parties without consent. *Id.* ¶¶ 80-86. Plaintiffs purport to assert these three counts on behalf of a class defined, in relevant part, as "[a]ll individuals who had their biometric[s] . . . collected . . . by Defendant when visiting a Target location in the State of Illinois." *Id.* ¶ 59. Plaintiffs seek statutory damages, injunctive relief, and attorneys' fees and costs. *Id.* p. 20.

There are two bases for Plaintiffs' assertions—news articles/internet posts (*id.* ¶¶ 22-29) and "Plaintiffs' Experiences." (*id*. ¶¶ 35-55)—almost all of which are unchanged from the original complaint. Target demonstrated in its original Motion to Dismiss that most of the materials do not say that Target is using facial recognition technology in Illinois, and those few that do are not enough to create the plausible inference that Target is actually doing so. ECF No. 12 at pp. 3-12. But Plaintiffs did not remove these allegations, as they should have.

With regard to their own experiences, Plaintiffs still rely almost exclusively on the assertion that Target did not inform them of any collection of biometrics and that Target did not obtain a written release for the collection of biometric information from them. FAC ¶¶ 39-40, 44-45, 49-50, 54-55. These allegations still address only the lack of conduct that ***would be*** required ***if*** Target were using facial recognition technology in Illinois—which it is not. In the hopes of prolonging a doomed claim, Plaintiffs offer only one new allegation in the FAC: that on one occasion on or about July 27, 2024 (months after the original complaint was filed), a new plaintiff (Lindsay Schumm) (i) was allegedly followed around a Target by a member of Target's loss prevention team and (ii) received a message that a member of Target's loss prevention team viewed Ms. Schumm's LinkedIn profile. *Id.* ¶¶ 35-36. Based on this one event involving Ms. Schumm, Plaintiffs assert in their complaint that "[t]hese facts plausibly support Target's use of facial recognition technology to recognize and identify Ms. Schumm." *Id.* ¶ 6.

## ARGUMENT

Federal Rule of Civil Procedure 8(a) requires a "short and plain statement" of the claims that establishes the pleader's entitlement to relief. Fed. R. Civ. P. 8(a). Although "specific facts are not necessary" to meet this threshold, a complaint must put a defendant on notice of what the "claim is ***and the grounds upon which it rests***." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (emphasis added). A pleading fails to meet this standard where the factual detail in a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Id.*

A complaint also must contain sufficient "short and plain statement[s]" of factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs' Complaint fails these requirements: Plaintiffs' so-called facts are sketchy and their theory implausible. Because Plaintiffs elected not to dismiss or amend this Complaint after Target alerted Plaintiffs to these shortcomings (*see* Ex. A), and Plaintiffs have now filed an equally infirm amendment, the FAC should be dismissed with prejudice.

## I. Plaintiffs' Sources Do Not Support Plaintiffs' Assertions That Target is Using Facial Recognition Technology.

The FAC makes clear that Plaintiffs have no personal knowledge of Target's use of facial recognition technology for surveillance in Illinois. So, Plaintiffs still rely primarily on news articles and internet posts to attempt to fill this gap.

***First***, Plaintiffs still invoke reputable news sources that merely refer to retailers' use of facial recognition technology. Plaintiffs allege that "Target and other major retailers have been investing in theft-prevention research and 'teaming up with technology companies to develop and deploy next-generation video surveillance systems, facial-recognition cameras,' and other securities technologies 'superpowered by AI [artificial intelligence].'" FAC ¶ 23. In support of this allegation, Plaintiffs cite an article from CNBC.[1]

The text of the *CNBC Article* does not say that Target is deploying facial recognition technology in Illinois. What the article actually says is that a variety of retailers are using a variety of technologies to combat theft. Specifically,

> Walmart, Target, Lowe's, Kroger, Macy's, CVS and other major retailers are teaming up with technology companies to develop and deploy next-generation video surveillance systems, facial-recognition cameras, license-plate and vehicle

[1] Ex. B, Bob Woods, *How America's biggest retailers plan to use technology to catch organized retail theft*, CNBC (Aug. 1, 2023), https://www.cnbc.com/2023/07/29/how-americas-biggest-retailers-will-use-tech-to-catch-retail-theft.html ("*CNBC Article*").

> readers, autonomous security robots, radio-frequency identification (RFID) tags, smart case locks and predictive analytic software. While versions of this type of security tech have been in place for years, they're now being superpowered by AI.

*CNBC Article.* The article does not delineate which retailers are engaged in which activity, and certainly does not say that Target is using facial recognition technology. Indeed, the only conduct attributed directly to Target in the *CNBC Article* is the ***funding*** of a research study conducted in ***Florida*** since 2000 that "has tested hundreds of technologies in a ***simulation laboratory*** that recreates different retail environments, such as a checkout area in a big-box store, aisles in a home-improvement center or a shopping mall parking lot." *Id.* (emphasis added).

Similarly, Plaintiffs still cite an April 2024 article from *PayPath*[2] that asserts that Target uses "in-store facial recognition technology," (FAC ¶ 27), which in turn cites a 2011 article from *The Boston Globe*.[3] *The Boston Globe* article cites two "current or former" Target employees for the proposition that Target is using "state of the art equipment" and is collaborating with other retailers to combat organized retail crime. But neither quoted individual states (nor could they) that Target was or is using facial recognition technology, nor does *The Boston Globe* article itself state (nor could it) that Target was or is using such technology. Rather, the article repeatedly references the human element involved in monitoring Target's stores—technicians watching video feeds from thousands of Target stores. The only reference in the article to "facial recognition technology" is a statement that a ***different*** retailer—CVS Caremark—was ***considering*** (in 2011) adding facial recognition to CVS Caremark's video cameras.

---

[2] Ex. C, Dan Kahan, *Why Target is the Worst Store to Shoplift From*, PAYPATH (Apr. 25, 2024), https://www.paypath.com/small-business/why-target-is-the-worst-store-to-shoplift-from.

[3] Ex. D, Jenn Abelson, "Target goes high-tech to stop increasingly savvy thieves: Technology drives Target's tough-minded antitheft operation," BOSTON GLOBE (Dec. 10, 2011), available at https://www.bostonglobe.com/metro/2011/12/10/target-goes-high-tech-stop-increasingly-savvy-thieves/UFF89UlSQ59nnS8dhidcDP/story.html.

***Second***, Plaintiffs still cite numerous articles that make ***no*** reference to facial recognition technology:

- A 2018 video segment from *CBS Evening News*[4] (FAC ¶ 26) that does not mention facial recognition technology;
- A 2020 article from *Business Insider*[5] (*id.* ¶ 27) that quotes six then-current and former Target employees in Minnesota, Michigan, Virginia, New York, and California and makes no mention of facial recognition technology;
- A May 2023 article from the *Daily Dot*[6] (*id.* ¶ 26) that does not mention facial recognition technology;
- Another Quora post[7] from approximately September 2023 from a person identified as "Marie Alsbergas" (*id.* ¶ 27) who references obtaining "facial photos" from security cameras but does not mention facial recognition technology;
- A blog post[8] written by Jodie Kautt, Target's Vice President of Cybersecurity (*id.* ¶ 22), that makes no reference to facial recognition technology;

[4] CBS Evening News, How Target retailer helps catch criminals outside its stores (Apr. 8, 2018), https://www.youtube.com/watch?v=y1HUhmawV8I.

[5] Ex. E, Shoshy Ciment & Mary Meisenzahl, *Target Employees Say Store Doesn't Stop All Shoplifters*, BUSINESS INSIDER (Dec. 9, 2020), https://www.businessinsider.com/target-employees-say-store-doesnt-stop-all-shoplifters-2020-12.

[6] Ex. F, Parks Kugle, *Target Builds Months-Long Case Against Shoplifter*, The DAILY DOT (May 12, 2023), available at https://www.dailydot.com/news/target-builds-monthslong-case-against-shoplifter/.

[7] Ex. G, *How does Target identify people on camera after the fact of shoplifting? They issued a warrant for me and that video shows that it was not me, yet they still arrested me.* QUORA, available at https://www.quora.com/How-does-Target-know-if-you-ve-shoplifted (last visited August 28, 2024).

[8] Ex. H, Jodie Kautt, *Applying Cyber Principles to Combatting Organized Retail Crime* (Aug. 29, 2023), https://tech.target.com/blog/cybersecurity-combatting-organized-retail-crime.

- A Target press release[9] that states, "[w]e are making significant investments in strategies to prevent [crime] from happening in our stores and protect our guests and our team" (*id.* ¶ 24) that does not reference facial recognition technology;
- An article on Target's website[10] that states, "Target has a top-rated forensic services laboratory that provides forensic examinations, and assists outside law enforcement with help on special cases" (*id.* ¶ 26) that nowhere mentions facial recognition technology; and
- Target's privacy policy (*id.* ¶ 28) that, by Plaintiffs' own admission, makes no reference to facial recognition technology.

In sum, Plaintiffs have no personal knowledge to support the allegation that Target is using facial recognition technology. In lieu of such knowledge, Plaintiffs attempt to state a claim by inviting this Court to (i) accept at face value Plaintiffs' misleading characterizations of their sources, and (ii) draw the implausible conclusion that any use of advanced security measures and security cameras must involve facial recognition technology. The Court should reject this invitation, and the Seventh Circuit's decision in *Bridges v. Blackstone, Inc.*, 66 F.4th 687 (7th Cir. 2023), shows why.

In *Bridges*, the plaintiffs alleged that Blackstone (an investment firm) acquired Ancestry.com in order to gain access to the genetic information that Ancestry.com had gathered as part of its consumer DNA testing products. 66 F.4th at 688-89. They alleged that this

---

[9] Ex. I, Target Press Release, Target Corporation Reports First Quarter Earnings (May 17, 2023), *available at* https://corporate.target.com/press/release/2023/05/target-corporation-reports-first-quarter-earnings.

[10] Ex. J, An Unexpected Career: Target's Forensic Services Laboratory (Last updated Mar 29, 2022), https://corporate.target.com/news-features/article/2012/02/an-unexpected-career-target-forensic-services-labo.

acquisition violated the restrictions on the disclosure of genetic information under the Illinois Genetic Information Privacy Act ("GIPA"). *Id.* at 689. The district court held that the plaintiffs had failed to plausibly allege a claim, and the Seventh Circuit affirmed. *Id.* at 688.

The Seventh Circuit reasoned that "we cannot plausibly infer that a run-of-the-mill corporate acquisition, without more alleged about that transaction, results in a compulsory disclosure [under GIPA]" because "the plaintiffs' complaint was bare bones." *Id.* at 689. It was neither enough for the plaintiffs to "focus on Blackstone's wealth and invite us to infer that the firm somehow forced or pressured Ancestry to disclose protected information by virtue of its market power;" nor for the plaintiffs to invoke "a Bloomberg news article reporting that Blackstone, as part of the firm's broader investment strategy, planned to sell data from unnamed portfolio companies to unaffiliated third parties;" nor enough for the plaintiffs to invoke "Ancestry's old privacy policy to support the allegation that the company would share data in the event of an acquisition." *Id.* at 689-90.

Plaintiffs here have followed the same flawed playbook as the plaintiffs in *Bridges*, so the result here should be the same. Like in *Bridges*, Plaintiffs focus on atmospherics and the size/wealth of the defendant: Plaintiffs point out Target's size and revenue (FAC ¶ 13), the pervasiveness of organized retail crime ("ORC") (*id.* ¶ 22), and retailers' efforts to combat ORC using technology. *Id.* ¶ 23. Also like in *Bridges*, Plaintiffs twist media reports to fit their narrative without regard to what the reports actually say. *See supra* pp. 4-7. Indeed, in *Bridges*, the district court specifically noted the gap between statements in the plaintiffs' sources and the plaintiffs' allegations, explaining that "in reviewing the entirety of those statements, the statements contradict Plaintiffs' broad conclusory allegations and instead suggest the opposite of what Plaintiffs allege." *Bridges v. Blackstone Grp., Inc.*, No. 21-CV-1091-DWD, 2022 WL 2643968, at *4-5 (S.D. Ill.

July 8, 2022), *aff'd sub nom. Bridges v. Blackstone, Inc.*, 66 F.4th 687 (7th Cir. 2023). Here, the same is true and the allegations "purporting to summarize" Plaintiffs' sources should be disregarded because the use of facial recognition technology by Target in Illinois "is not specifically mentioned." *Bridges*, 2022 WL 2643968, at *5. *See also id.* at *4 n.9 (citing Seventh Circuit decisions in *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) and *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007), for the proposition that a court is not bound by a plaintiff's characterization of the contents of a document).

Further, just like in *Bridges*, Plaintiffs attempt to contort Target's own statements into admissions. Plaintiffs allege, for example, that the statement in Target's privacy policy that "it may share the personal information it collects . . . 'to protect the rights[,] property or safety of our company, our Guests or others'" means that Target is both collecting and sharing facial geometry. FAC ¶ 29. Courts are required to draw "***plausible*** inferences in the plaintiffs' favor." *Bridges*, 66 F.4th at 689 (emphasis added). But Plaintiffs' proposed inferences are not plausible. Like in *Bridges*, none of these allegations bridge the gap between the facts and Plaintiffs' theory.

Plaintiffs' late addition of Ms. Schumm's alleged experience of being followed and having her LinkedIn profile visited does not cure these deficiencies, and the decision of the court in *Smith v. City of Chicago*, No. 21-CV-00890, 2022 WL 888942 (N.D. Ill. Mar. 25, 2022), shows why. In that case, two members of a Chicago family sued the city and several Chicago Police officers related to the allegedly botched execution of a search warrant. *Id.* at *1-2. One of the plaintiffs asserted a *Monell* claim that the City of Chicago had a "*de facto* policy of applying for and executing residential search warrants based on inaccurate, unreliable and unverifiable information." *Id.* at *6-7. In support of this claim, he relied on the family's experience with a search warrant execution along with general assertions about the disproportionate execution of

search warrants in Black or Latino neighborhoods and the high rate of negative search results (*i.e.*, no contraband was recovered) during the execution of those search warrants. *Id.* at *7-8. The plaintiff argued that was enough to state a claim. The court disagreed.

The court in *Smith* disregarded the plaintiff's conclusions, examined the remaining factual allegations, and reasoned that "while it is ***possible*** that sloppy police work or some *de facto* policy caused 'negative' search warrants, [the plaintiff] fails to demonstrate why this conclusion is plausible." *Id.* at *8. Rather, because the plaintiff's "allegations just invite[d] ***conjecture*** about the instances of 'negative' search warrants," the allegations "fail[ed] to meet the Rule 8 notice-pleading requirements," and dismissal was proper. *Id.* (emphasis added).

Here, despite each Plaintiff (including Ms. Schumann) alleging that they have shopped at Target "dozens of times over the past five years" (FAC ¶¶ 9-12), they cannot identify more than a single set of circumstantial facts—Ms. Schumm's experience during one Target visit that occurred after Target filed its motion to dismiss—that allegedly support the assertion that Target has a policy of using facial recognition technology to identify guests. As in *Smith*, while it is ***possible*** based on Ms. Schumm's alleged experience that Target is using facial recognition technology (and to be clear, it is not), that is really just "conjecture." Taking as true Ms. Schumm's allegation that the visit to her LinkedIn page demonstrates that her identity was known to the Target asset protection team, it is far more likely based on Plaintiffs' own authorities that other investigative means were used to identify Ms. Schumm. After all, Ms. Schumm alleges that she is present in that particular store roughly every other week: "Plaintiff Lindsay Schumm . . . shops at Target once or twice a month, and has visited the Target location at 301 Veterans Parkway, Normal, Illinois, dozens of times over the past five years." *Id.* ¶ 12.

## II. Plaintiffs Cannot Rely on Others' Conclusory Assertions that Target is Using Facial Recognition Technology.

Plaintiffs also still attempt to bootstrap themselves into court by using conclusory and unsupported assertions found on the internet/social media as support for the Complaint's conclusory and unsupported assertions. The Court should not permit such a workaround.

***First***, Plaintiffs continue to invoke less reputable "news" sources that provide no basis for their own conclusory (and defamatory) assertions. For example, Plaintiffs allege that Target uses "'sophisticated' cameras and 'facial recognition software which is top-of-the-line.'" *Id.* ¶ 25. But the source for these assertions is two nearly identical articles from the "*U.S. Sun*" (one from December 2023 (*id.* ¶ 25)[11] and one from July 2022 (*id.* ¶ 27)[12]) that present these assertions without any citation or attribution.

***Second***, Plaintiffs still cite internet posts and social media for the proposition that "[f]ormer Target employees confirm the use of facial recognition [technology] by Target." *Id.* ¶ 25-27. In support of these allegations, Plaintiffs cite a Quora post from 2019[13] and a February 2024 article from "daily.dot"[14] (which in turn cites a "viral TikTok"). Neither supports the assertion that Target is or was using facial recognition technology in its Illinois stores.

---

[11] Ex. K, Ashley Palya, *CAM YOU NOT? 'Can Target be next?' ask shoppers after Rite Aid blasted over anti-theft measure that 'hit innocent customers,'* U.S. SUN (Dec. 22, 2023), https://www.the-sun.com/news/9920418/shoppers-want-target-facial-recognition-cameras-banned-rite-aid/ ("Target also uses facial recognition software which is 'top-of-the-line' as it has image analytics.").

[12] Ex. L, Elsa Buchanan, *NO ESCAPE Target uses 4 security hacks to make sure they catch every thief – how the retailer knows you're stealing*, U.S. SUN (July 29, 2022), https://www.the-sun.com/lifestyle/5877078/target-stores-security-hacks-shoplifting/ ("Target's cameras use top-of-the-line, in-store facial recognition technology paired with image analytics which allow staff to keep a close eye on suspicious customers").

[13] Ex. G, *How does Target know if you've shoplifted?* QUORA, available at https://www.quora.com/How-does-Target-know-if-you-ve-shoplifted (last visited June 7, 2024).

[14] Ex. M, Tangie Mitchell, *Ex-Target Worker: Why Target 'Lets' You Get Away with Shoplifting*, THE DAILY DOT (Feb. 14, 2024), https://www.dailydot.com/news/target-grand-larceny-psa/.

The Quora article is alleged to have been written by a former Target manager named Dan Bradbury. Ex. G. The writer asserts that he used to work at a store in Cleveland, Ohio, that allegedly "had a massive upgrade to its equipment." *Id.* The post is ambiguous about whether the upgrade included facial recognition technology (which would be false) or whether the author was surmising that facial recognition was an unimplemented next step, stating, "***[e]ventually***, facial recognition will get so good that you're being watched every second you're in the store and the behavior recognition software will get to the point where you cannot steal." *Id.* (emphasis added).

The "viral TikTok" is reported to have been posted by a former Target employee identified as Kaitlynd! (@reddnea). "Kaitlynd!" reportedly states, "[t]hey use facial recognition software, so they'll get scans of your face and they'll take different pictures and angles from different cameras in the store and kind of merge and blend them together to get a clear image of who you are." Ex. M. "Kaitlynd!" provides no context or support for this assertion.

This Court should not be led astray by Plaintiffs' invocation of these materials, and the decision in *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007), explains why. In *Walker*, two plaintiffs who completed domestic and international financial transactions after September 11, 2001, sued the Society for Worldwide Interbank Financial Telecommunication ("SWIFT"). The plaintiffs alleged, amongst other things, that SWIFT violated their federal and constitutional privacy rights and their rights under Illinois consumer protection laws by sharing transactional information with the government. *Id.* at 803-804. In support of their allegations regarding SWIFT's conduct, the plaintiffs relied on a *New York Times* article reporting on the existence of the Terrorist Financing Tracking Program and its gathering of information, including from SWIFT. *Id.* at 804-805. After the case was transferred from the Northern District of Illinois to the Eastern District of Virginia, the transferee court reviewed the allegations and dismissed the

case. *Id.*[15]

The court in *Walker* recognized that the key question, in light of the lack of allegations by the plaintiffs based on their personal knowledge, was "whether the *Times* article may appropriately be used by plaintiffs or a court to supplement or fill holes in the complaint." *Id.* at 806. The answer was "no" because the article did not "give rise to the causes of action alleged in the complaint" and was not "central or integral to those causes of action. Instead, it merely reports information of questionable reliability." *Id.*

The court distinguished circumstances under which materials may be incorporated by reference into a complaint or considered on a motion to dismiss, explaining that such materials do not include "reference[s] to unnamed or anonymous sources in a newspaper article" that would "allow parties to fill gaps in their factual allegations" because such a rule "would allow parties to circumvent Rule 11's duty to conduct 'an inquiry reasonable under the circumstances,' and would serve to reduce that duty to the mere purchase of a newspaper." *Id.* at 806-807. The same reasoning applies here, all the more so given that social media (on which Plaintiff relies) generally requires no verification of allegations before publication. Allowing a plaintiff to rely on statements like those Plaintiffs invoke here diminishes the plausibility requirement of Rule 8/Rule 12(b)(6) and the investigatory obligations of Rule 11 into nonexistence. If an internet search and a citation to whatever is found is all that is required to state a claim, no claim will ever be implausible and Rule 11 will be satisfied every time. That is not, and should not be, the standard this Court sets for stating a claim.

* * *

[15] While the court in *Walker* elected to dismiss pursuant to Rule 12(b)(1), given the developments in Article III jurisprudence since 2007 and the court's reasoning for not crediting the plaintiffs' citation to the newspaper article, Target respectfully submits that the procedural mechanism for dismissal in *Walker* is irrelevant.

The only information within Plaintiffs' personal knowledge is that they allegedly were not informed (in writing or otherwise) that any biometric information was being collected by Target during their visits, that they did not provide a written release to Target authorizing such collection, that Target's privacy policy lacks "any disclosures with respect to biometrics" and that Ms. Schumm's LinkedIn page was allegedly visited by a Target employee. FAC ¶¶ 34 n.20, 35-36, 39-40, 44-45, 49-50, 54-55. Plaintiffs suggest that the lack of such notice and disclosures, in conjunction with the internet sources Plaintiffs cite and Ms. Schumm's single isolated experience despite dozens of shopping trips, permit the Court to draw the reasonable inference that Target is violating BIPA. Not true. In light of the paucity of Plaintiffs' facts, the only plausible inference to be drawn from Target's lack of BIPA-required disclosures and processes is that Target is ***not*** using facial recognition technology anywhere, let alone in Illinois.

## III. Plaintiffs' Section 15(d) Claims are Contradicted by Their Own Allegations.

Section 15(d) of BIPA prohibits a private entity "in possession" of biometrics from "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's or a customer's biometric identifier or biometric information" (740 ILCS 14/15(d)) except in limited circumstances. FAC ¶ 82. Plaintiffs still assert a claim under this subsection of BIPA, alleging in Count III of the Complaint that, "[u]pon information and belief, Target is sharing Plaintiffs and other Class members' biometric identifiers and/or biometric information with third parties, including law enforcement." *Id.* ¶ 84. In their original complaint, Plaintiffs alleged that "Plaintiffs have no way of knowing ***if***, and to whom, their biometrics are being disclosed by Defendant." ECF No. 1 at ¶ 32 n.20 (emphasis added). And because that allegation contradicted their other allegations not made on information and belief, Target argued in its prior motion that this claim should be dismissed. *See* ECF No. 12 at p. 12.

The FAC attempts to plead around this problem by changing the allegation to "Plaintiffs have no way of knowing to whom their biometrics are being disclosed by Defendant." FAC ¶ 34 n.20. It is not believable that between the time of the filing of the original complaint and the filing of the FAC, Plaintiffs were able to dispel their prior uncertainty regarding whether their biometrics were allegedly being shared at all. The Court should take Plaintiffs at their prior word and dismiss Plaintiffs' Section 15(d) claim with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' FAC should be dismissed. Because Plaintiffs have now had several opportunities to cure the deficiencies noted in a pre-motion letter from the undersigned (*see* Ex. A) and laid out fully in Target's Motion to Dismiss Plaintiff's Original Complaint, that dismissal should be with prejudice.

Dated: September 4, 2024

Respectfully Submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Justin O. Kay*

Justin O. Kay (ARDC No. 6286557)
Ambria D. Mahomes (ARDC No. 6334463)
320 South Canal Street, Suite 3300
Chicago, Illinois 60606-5707
Telephone: +1 312.569.1000
Facsimile: +1 312.569.3000
justin.kay@faegredrinker.com
ambria.mahomes@faegredrinker.com

*Counsel for Defendant Target Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2024, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Justin O. Kay*
Justin O. Kay