# EXHIBIT 2

Case: 1:24-cv-04452 Document #: ~~1~~15 Filed: ~~05/30/24~~08/21/24 Page 1 of ~~20~~21 PageID #:~~1~~166

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DENISE ARNOLD, BLAIRE BROWN, ~~and~~ SANDRE WILSON, and LINDSAY SCHUMM, Individually and ~~On~~on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No. 1:24-cv-04452<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Denise Arnold, Blaire Brown, ~~and~~ Sandre Wilson, and Lindsay Schumm ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this First Amended Class Action Complaint for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), against Target Corporation ("Target"), and allege as follows based on personal ~~("Target"), and alleges as follows based on personal knowledge as to themselves and on the~~ knowledge as to themselves and on the investigation of counsel.

**NATURE OF THE ACTION**

1. This lawsuit arises out of Defendant's actions in collecting, capturing, otherwise obtaining, using, and/or storing the biometric identifiers and/or biometric information of Plaintiffs and other similarly situated individuals, including scans of their facial geometry, without

informing them in writing or obtaining their written consent, as required by BIPA.

2. As the Illinois Legislature has recognized,

> [B]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information such as Social Security numbers can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

*Carpenter v. McDonald's Corp.*, 580 F.Supp 3d 512, 515 (N.D. Ill. 2022) (citing 740 ILCS 14/5); *see also Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir. 2020) (noting the "threat of irreparable privacy harms, identity theft, and other economic injuries" arising from increasing use of biometric data).

3. In light of these privacy concerns, the growing use of biometrics in various contexts, and the fact that "[t]he full ramifications of biometric technology are not fully known," BIPA was enacted to regulate how private entities may collect, use, and/or store individuals' biometric identifiers and/or biometric information. 740 ILCS 14/5.

4. BIPA, provides, *inter alia*, that no private entity may collect, capture, or otherwise obtain biometric identifiers or biometric information without first informing the subject in writing of the fact, purpose, and length of the collection and receiving a written release from the subject. 740 ILCS 14/15(b). BIPA also prohibits private entities from profiting from biometric identifiers or information or from disseminating biometric identifiers or information without consent. BIPA further requires that private entities in possession of biometric identifiers or biometric information must develop a publicly available written policy establishing a schedule for their retention and, importantly, their destruction, within certain statutory time limits. 740 ILCS 14/15(a).

5. Although BIPA was enacted in 2008, Defendant has been violating the statute by

collecting, capturing, otherwise obtaining, using, and/or storing the unique and highly sensitive biometric identifiers and biometric information, including scans of facial geometry, of thousands of individuals, without their knowledge or consent, through the use of security cameras and video surveillance systems throughout its stores in Illinois, including in its self-checkout lanes.

~~6~~. Defendant has not made publicly available any written policies containing retention

6. Indeed, on July 27, 2024, while shopping with her son at a Target store in Normal, Illinois, Plaintiff Lindsay Schumm received a pop-up notification on her phone that a Target Asset Protection Operations Manager had viewed her LinkedIn profile 33 minutes earlier – shortly after Ms. Schumm had entered the store. These facts plausibly support Target's use of facial recognition technology to recognize and identify Ms. Schumm.

7. Defendant has not made publicly available any written policies containing retention schedules or guidelines for permanently destroying biometric identifiers and biometric information, as required by BIPA.

~~7~~8. Plaintiffs bring this action on behalf of all individuals who had their biometric identifiers and/or biometric information collected, captured, otherwise obtained, used, and/or stored, when visiting a Target location in Illinois at any time within the applicable statute of limitations, to prevent Defendant from further violating Illinois law, and to recover damages for Defendant's violations of her and other Class members' statutorily-protected rights to privacy under BIPA.

## THE PARTIES

~~8~~9. Plaintiff Denise Arnold is, and has been at all relevant times, a resident and citizen of Homewood, Illinois. Ms. Arnold is a frequent Target shopper and has visited Target locations in Illinois dozens of times over the past five years, including those located at 17605 S. Halsted

Street, Homewood, Illinois, 15850 S. 94th Avenue, Orland Park, Illinois, and 7300 191st Street, Tinley Park, Illinois.

~~9~~10. Plaintiff Blaire Brown is, and has been at all relevant times, a resident and citizen of Homewood, Illinois. Ms. Brown is a frequent Target shopper and has visited Target locations in Illinois dozens of times over the past five years, including those located at 17605 S. Halsted Street, Homewood, Illinois, 15850 S. 94th Avenue, Orland Park, Illinois, and 7300 191st Street, Tinley Park, Illinois.

~~10~~11. Plaintiff Sandre Wilson is, and has been at all relevant times, a resident and citizen of Chicago, Illinois. Ms. Wilson is a frequent Target shopper and has visited Target locations in Illinois dozens of times over the past five years, including those located at 7100 S. Cicero Avenue, Chicago, Illinois, 4120 W. 95th Street, Oak Lawn, Illinois, and 15850 S. 94th Ave, Orland Park, Illinois.

12. Plaintiff Lindsay Schumm is, and has been at all relevant times, a resident and citizen of Bloomington, Illinois. Ms. Schumm shops at Target once or twice a month, and has visited the Target location at 301 Veterans Parkway, Normal, Illinois, dozens of times over the past five years.

~~11~~13. Defendant Target Corporation ("Target") is incorporated in Minnesota and maintains its principal place of business in Minnesota. Target is the sixth-largest retailer in the United States, with revenues of over $107 billion in 2022.[1] Target has over 1,900 stores in the United States, [2] and approximately 75 locations in Illinois. [3]

## JURISDICTION AND VENUE

~~12~~14. This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because there are more than 100 Class members, the aggregate amount in controversy

exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

~~13~~15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (c)(2)

[1] https://nrf.com/research-insights/top-retailers/top-100-retailers/top-100-retailers-2023-list (last visited May 30, 2024).

[2] https://corporate.target.com/investors/corporate-overview (last visited May 30, 2024).

[3] https://www.target.com/store-locator/store-directory/illinois (last visited May 30, 2024).

because Defendant does business in and is subject to personal jurisdiction in this District. Venue is also proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

### I. Illinois's Biometric Information Privacy Act

~~14~~16. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information," the Illinois Legislature enacted BIPA in 2008. Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA regulates, *inter alia*, "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

[1] https://nrf.com/research-insights/top-retailers/top-100-retailers/top-100-retailers-2023-list (last visited May 30, 2024).

[2] https://corporate.target.com/investors/corporate-overview (last visited May 30, 2024).

[3] https://www.target.com/store-locator/store-directory/illinois (last visited May 30, 2024).

~~15~~17. Under BIPA, a "biometric identifier" refers to a person's "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "Biometric information" refers to "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier." 740 ILCS 14/10.

~~16~~18. BIPA requires that before a private entity can collect, capture, or otherwise obtain an individual's biometrics, it must: (1) inform the person in writing that biometric identifiers or information will be collected or stored, (2) inform the person in writing of the specific purpose and length of term for which such biometrics are being collected, stored, and used, and (3) obtain a written release from the person or their legally authorized representative authorizing the collection or his or her biometrics. 740 ILCS 14/15(b). The informed-consent requirement has been described by the Seventh Circuit as the "heart of BIPA," because it ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Bryant*, 958 F.3d at 626.

~~17~~19. BIPA also requires that

> [a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

~~18~~20. In addition, "no private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information," 740 ILCS 14/15(c), nor may it disclose, redisclose, or disseminate biometric identifiers or biometric information unless the subject has consented or certain other narrow exceptions are present. 740 ILCS 14/15(d).[4]

~~19~~21. BIPA provides a private cause of action for any person aggrieved by a violation of the statute and allows recovery of $1,000 for negligent violations and $5,000 for intentional or reckless violations, as well as attorneys' fees and litigation expenses, and injunctive relief. 740 ILCS 14/20.

## II. Defendant's Collection, Capture, Use, and/or Storage of Illinois Individuals' Biometric Identifiers and/or Biometric Information

~~20~~22. Inventory "shrinkage," which includes retail theft and shoplifting, has long been a major concern, amounting to nearly $95 billion in losses for U.S. retailers and communities in 2021, up from $90 billion in 2020, according to the National Retail Foundation. [5]

[4] These exceptions are where disclosure "completes a financial transaction requested or authorized by the subject" or is required by State or federal law, municipal ordinance, or a valid warrant or subpoena. 740 ILCS 14/15(d).

[5] Target tech blog, "Applying Cyber Principles to Combatting Organized Retail Crime" (Aug. 29, 2023), *available at* https://tech.target.com/blog/cybersecurity-combatting-organized-retail-crime.

~~21~~23. As a result of the rise in large-scale merchandise theft, including, in particular, organized retail theft,[6] Target and other major retailers have been investing in theft-prevention research and "teaming up with technology companies to develop and deploy next-generation video surveillance systems, facial-recognition cameras," and other securities technologies "superpowered by AI [artificial intelligence]."[7]

[4] These exceptions are where disclosure "completes a financial transaction requested or authorized by the subject" or is required by State or federal law, municipal ordinance, or a valid warrant or subpoena. 740 ILCS 14/15(d).

[5] Target tech blog, "Applying Cyber Principles to Combatting Organized Retail Crime" (Aug. 29, 2023), *available at* https://tech.target.com/blog/cybersecurity-combatting-organized-retail-crime.

24. After announcing that it had lost as much as $800 million from shrink in 2022, Target stated:

> As we look ahead, we now expect shrink will reduce this year's profitability by more than $500 million compared with last year. While there are many potential sources of inventory shrink, theft and organized retail crime are increasingly important drivers of the issue. We are making significant investments in strategies to prevent this from happening in our stores and protect our guests and our team. [8]

25. To that end, Target uses "hefty security practices to combat theft at its stores," including "sophisticated" cameras and "facial recognition software which is 'top-of-the-line' as it

[6] Organized retail theft "involves groups of people targeting stores that carry higher-value merchandise like electronics, sporting goods, cosmetics, clothing, handbags and shoes. The groups steal large quantities of products and then resell them in secondary marketplaces, such as eBay, OfferUp and Facebook Marketplace or even back into the legitimate supply chain, according to law enforcement." Parija Kavilanz, "This Isn't Theft of Need. A More Insidious Type of Crime is Pushing Some Stores to Close," *CNN* (Sept. 27, 2023), *available at* https://www.cnn.com/2023/09/27/business/target-store-closures-retail-crime/index.html.

[7] Bob Woods, "How America's Biggest Retailers Plan to Use Technology to Catch Organized Retail Theft," *CNBC Evolve* (July 29, 2023), *available at* https://www.cnbc.com/2023/07/29/~~how-~~how-americas-biggest-retailers-will-use-tech-to-catch-retail-theft.html.

[8] Target Press Release, "Target Corporation Reports First Quarter Earnings" (May 17, 2023), *available at* https://corporate.target.com/press/release/2023/05/target-corporation-reports-first-quarter-earnings.

~~22~~. After announcing that it had lost as much as $800 million from shrink in 2022, ~~Target stated:~~


> As we look ahead, we now expect shrink will reduce this year's profitability by more than $500 million compared with last year. While there are many potential sources of inventory shrink, theft and organized retail crime are increasingly important drivers of the issue. We are making significant investments in strategies to prevent this from happening in our stores and protect our guests and our team. [8]

~~23~~. To that end, Target uses "hefty security practices to combat theft at its stores," including "sophisticated" cameras and "facial recognition software which is 'top-of-the-line' as it has image analytics."[9] Former Target employees confirm the use of facial recognition by Target. [10]

~~24~~26. As touted on its corporate website, "Target has a top-rated forensic services laboratory that provides forensic examinations, and assists outside law enforcement with help on special cases."[11] "Based in Las Vegas and Minneapolis, the forensic team helps solve organized retail crimes committed at Target stores through video and image analysis, latent fingerprint and computer forensics." [12] Target's forensics lab "opens approximately 300 cases a year and is so efficient actual Police Departments have asked for its help." [13]

27. Video footage from every single Target store "can be viewed live" at Target's "National Investigation Center" in Minneapolis. [14] As explained by a former Target employee,

~~americas-biggest-retailers-will-use-tech-to-catch-retail-theft.html.~~

8 Target Press Release, "Target Corporation Reports First Quarter Earnings" (May 17, 2023), *available at* https://corporate.target.com/press/release/2023/05/target-corporation-reports-first-quarter-earnings.

9 Ashley Palya, "Cam You Not? 'Can Target be Next?' Ask Shoppers After Rite Aid Blasted Over Anti-Theft Measure that 'Hit Innocent Customers'," *The U.S. Sun* (Dec. 21, 2023), *available at* https://www.the-sun.com/news/9920418/shoppers-want-target-facial-recognition-cameras-banned-rite-aid.

10 *See*, *e.g.*, Tangie Mithell, "Former Target Worker Reveals How Store 'Lets' You Steal Until They Can Charge You with Grand Larceny," *Daily Dot* (Feb. 3, 2024), *available at* https://www.dailydot.com/news/target-grand-larceny-psa/; *see also* Dan Bradbury, Answer to "How Does Target Know if You've Shoplifted?" (Sept. 30, 2019), https://www.quora.com/How-does-Target-know-if-you-ve-shoplifted.

11 "An Unexpected Career: Target's Forensic Services Laboratory" (Feb. 15, 2023), *available at* https://corporate.target.com/news-features/article/2012/02/an-unexpected-career-target-forensic-services-labo.

retail crimes committed at Target stores through video and image analysis, latent fingerprint and computer forensics."[12] Target's forensics lab "opens approximately 300 cases a year and is so efficient actual Police Departments have asked for its help."[13]

25. Video footage from every single Target store "can be viewed live" at Target's "National Investigation Center" in Minneapolis.[14] As explained by a former Target employee, "Headquarters tracks the people who are impacting the stores the most. Sometimes we are told to only collect information but do not apprehend. This is because a Target Investigator is working with law enforcement to press charges and get these people arrested for a long time."[15] Current and former Target employees report that it is common for Target to not immediately apprehend certain shoplifters, but instead continue to monitor them on additional store visits and wait for the total value of their theft to reach a certain (larger) amount.[16] This customer tracking occurs across multiple stores and is enabled, at least in part, by the use of facial recognition technology.[17]

[12] "An Unexpected Career: Target's Forensic Services Laboratory" (Feb. 15, 2023), *available at* https://corporate.target.com/news-features/article/2012/02/an-unexpected-career-target-forensic-services-labo; *see also* Dan Kahan, "Why Target is the Worst Store to Shoplift From," *Paypath* (Mar. 25, 2024), *available at* https://www.paypath.com/Small-Business/why-target-is-the-worst-store-to-shoplift-from; Parks Kugle, "Target Builds Months-Long Case Against Shoplifter," *Daily Dot* (May 12, 2023), *available at* https://www.dailydot.com/news/target-builds-monthslong-case-against-shoplifter/.

[13] CBS Evening News, "How Target retailer helps catch criminals outside its stores" (Apr. 8, 2018), *available at* https://www.youtube.com/watch?v=y1HUhmawV8I.

[14] *Id.*

"Headquarters tracks the people who are impacting the stores the most. Sometimes we are told to only collect information but do not apprehend. This is because a Target Investigator is working with law enforcement to press charges and get these people arrested for a long time."[15] Current and former

Target employees report that it is common for Target to not immediately apprehend certain shoplifters, but instead continue to monitor them on additional store visits and wait for the total value of their theft to reach a certain (larger) amount.[16] This customer tracking occurs across multiple stores and is enabled, at least in part, by the use of facial recognition technology.[17]

28. Target's privacy policy confirms its use of video surveillance in its stores "for operational purposes . . ., fraud detection, theft prevention and security."[18]

29. Moreover, Target's privacy policy states that it may share the personal information it collects with third parties under various circumstances, including "to protect the rights property or safety of our company, our Guests or others."[19]

15 Shoshy Ciment & Mary Meisenzahl, "Target Employees Say Store Doesn't Stop All Shoplifters," *Business Insider* (Dec. 9, 2020), *available at* https://www.businessinsider.com/target-employees-say-store-doesnt-stop-all-shoplifters-2020-12.

16 *Id.*

17 Dan Kahan, "Why Target is the Worst Store to Shoplift From," *Paypath* (Mar. 25, 2024), *available at* https://www.paypath.com/Small-Business/why-target-is-the-worst-store-to-shoplift-from-; *see also* Elsa Buchanan, "Target Uses 4 Security Hacks to Make Sure They Catch Every Thief," *The U.S. Sun* (July 28, 2022), *available at* https://www.the-sun.com/lifestyle/5877078/target-stores-security-hacks-shoplifting/; Maria Alsbergas, Answer to "How Does Target Identify People on Camera After the Fact of Shoplifting?" (Sept. 3, 2023), https://www.quora.com/How-does-Target-identify-people-on-camera-after-the-fact-of-shoplifting-They-issued-a-warrant-for-me-and-that-video-shows-that-it-was-not-me-yet-they-still-arrested-me#.

18 *See* Target Privacy Policy, *available at* https://www.target.com/c/target-privacy-policy/-/N-4sr7p (last visited May 30, 2024).

19 *Id.*

26. Target's privacy policy confirms its use of video surveillance in its stores "for operational purposes . . ., fraud detection, theft prevention and security."[18]

~~27~~. Moreover, Target's privacy policy states that it may share the personal information it collects with third parties under various circumstances, including "to protect the rights property or safety of our company, our Guests or others." [19]

~~28~~30. Through the use of security cameras and video surveillance technology with facial recognition capabilities ~~in~~throughout its retail locations in Illinois, including in its self-checkout lanes, Defendant is collecting, capturing, otherwise obtaining, using, and/or storing customers' biometric identifiers and/or biometric information, in the form of scans of their facial geometry, without their knowledge.

~~29~~31. Defendant has not informed individuals, much less in writing that their biometric identifiers or biometric information is being collected, captured, or otherwise obtained, nor have they informed customers of the purpose or length of time for which such information is being collected, stored, or used. 740 ILCS 14/15(b).

~~30~~32. Defendant has not received written releases executed by individuals whose biometric identifiers and/or biometric information is being collected, stored, or used.

~~31~~33. Defendant has not made publicly available any written policy regarding the

~~from~~; *see also* Elsa Buchanan, "Target Uses 4 Security Hacks to Make Sure They Catch Every Thief," *The U.S. Sun* (July 28, 2022), *available at* https://www.the-sun.com/lifestyle/5877078/target-stores-security-hacks-shoplifting/; Maria Alsbergas, Answer to "How Does Target Identify People on Camera After the Fact of Shoplifting?" (Sept. 3, 2023), https://www.quora.com/~~How-does-Target-identify-people-on-camera-after-the-fact-of-shoplifting-They-issued-a-warrant-for-me-and-that-video-shows-that-it-was-not-me-yet-they-still-arrested-me#.~~

[18] *See* Target Privacy Policy, *available at* https://www.target.com/c/target-privacy-policy/-/N-4sr7p (last visited May 30, 2024).

~~[19] *Id.*~~

retention or permanent destruction of the biometric identifiers or biometric information that it possesses, "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first," as required by BIPA. 740 ILCS 14/15(a).

~~32~~34. Upon information and belief, Defendant lacks such policies and is retaining Plaintiffs and other similarly situated individuals' biometric identifiers and/or biometric information beyond the time limits set by BIPA.[20]

[20] Target's privacy policy does not contain any disclosures with respect to biometrics. *See id.* Thus, Plaintiffs have no way of knowing to whom their biometrics are being disclosed by Defendant.

**III. Plaintiffs' Experiences**

Plaintiff Lindsay Schumm

35. Plaintiff Lindsay Schumm shops at Target approximately twice a month. Ms. Schumm's most recent visit was to the Target store located at 301 Veterans Parkway, Normal, Illinois, on or about July 27, 2024. Over the past five years, Ms. Schumm has shopped at this Target store dozens of times. Ms. Schumm sometimes uses the self-checkout lanes, and sometimes completes her purchases with a human cashier.

36. During her July 27, 2024, visit, while shopping with her son, Ms. Schumm observed someone whom she believed to be a Target loss prevention employee following them. Thereafter, while waiting in line to pay, Ms. Schumm received a pop-up notification on her phone that Nichole Jiardina, a Target Asset Protection Operations Manager, had viewed Ms. Schumm's LinkedIn profile 33 minutes prior – shortly after she had entered the store.

37. Upon information or belief, the Target location visited by Ms. Schumm is equipped with security cameras and facial recognition-enabled video surveillance systems.

38. Upon information and belief, Ms. Schumm's biometric identifiers and/or biometric information, including scans of her facial geometry, were collected, captured, used, and/or stored by Defendant during her visits to Target.

39. At no time before or during Ms. Schumm's visits to Target was she ever informed (much less in writing), that her biometric identifiers or biometric information was being collected, captured, used, and/or stored by Defendant.

40. Nor did Ms. Schumm ever provide a written release authorizing the collection, use, or storage of her biometric identifiers or biometric information.

Plaintiff Denise Arnold

~~33~~41. Plaintiff Denise Arnold shops at Target approximately twice a month. Ms. Arnold's most recent visit was to the Target store located at 17605 S. Halsted Street, Homewood, Illinois, on or about May 8, 2024. Ms. Arnold also visited the Target store located at 7300 191st Street, Tinley Park, Illinois, on or about March 4, 2024. Over the past five years, Ms. Arnold has shopped at these stores, as well as the Target store located at 15850 S. 94th Ave, Orland Park, Illinois, dozens of times.

~~34~~42. Upon information or belief, the Target locations visited by Ms. Arnold are equipped with security cameras and facial recognition-enabled video surveillance systems.

~~35~~43. Upon information and belief, Ms. Arnold's biometric identifiers and/or biometric information, including scans of her facial geometry, were collected, captured, used, and/or stored by Defendant during her visits to Target locations.

~~36~~ 44. At no time before or during Ms. Arnold's visits to Target was she ever informed

20 Target's privacy policy does not contain any disclosures with respect to biometrics. *See id.* Thus, Plaintiffs have no way of knowing ~~if, and to whom,~~ their biometrics are being disclosed by Defendant.

(much less in writing), that her biometric identifiers or biometric information was being collected, captured, used, and/or stored by Defendant.

~~37~~45. Nor did Ms. Arnold ever provide a written release authorizing the collection, use, or storage of her biometric identifiers or biometric information.

Plaintiff Blaire Brown

~~38~~46. Plaintiff Blaire Brown shops at Target approximately twice a month. Ms. Brown's most recent visit was to the Target store located at 15850 S. 94th Ave, Orland Park, Illinois, on or about May 4, 2024. Ms. Brown also visited the Target store located at 7300 191st Street, Tinley Park, Illinois, on or about April 17, 2024, and the Target store located at 17605 S. Halsted Street, Homewood, Illinois, on or about April 5, 2024. Over the past five years, Ms. Brown has shopped at these Target stores dozens of times.

~~39~~47. Upon information or belief, the Target locations visited by Ms. Brown are equipped with security cameras and facial recognition-enabled video surveillance systems.

~~40~~48. Upon information and belief, Ms. Brown's biometric identifiers and/or biometric information, including scans of her facial geometry, were collected, captured, used, and/or stored by Defendant during her visits to Target locations.

~~41~~49. At no time before or during Ms. Brown's visits to Target was she ever informed (much less in writing), that her biometric identifiers or biometric information was being collected, captured, used, and/or stored by Defendant.

~~42~~50. Nor did Ms. Brown ever provide a written release authorizing the collection, use, or storage of her biometric identifiers or biometric information.

Plaintiff Sandre Wilson

~~43~~51. Plaintiff Sandre Wilson shops at Target approximately twice a month. Ms. Wilson's most recent visit was to the Target store located at 7100 S. Cicero Avenue, Chicago, Illinois, on or about April 22, 2024. Ms. Wilson also visited the Target store located at 4120 W. 95th Street, Oak Lawn, Illinois, on or about March 27, 2024. Over the past five years, Ms. Wilson has shopped at these Target stores, as well as the Target store located at 15850 S. 94th Ave, Orland Park, Illinois, as well as other Target locations in Illinois, dozens of times. Ms. Wilson sometimes uses the self-checkout lanes, and sometimes completes her purchases with a human cashier.

~~44~~52. Upon information or belief, the Target locations visited by Ms. Wilson are equipped with security cameras and facial recognition-enabled video surveillance systems.

~~45~~53. Upon information and belief, Ms. Wilson's biometric identifiers and/or biometric information, including scans of her facial geometry, were collected, captured, used, and/or stored by Defendant during her visits to Target locations.

~~46~~54. At no time before or during Ms. Wilson's visits to Target was she ever informed (much less in writing), that her biometric identifiers or biometric information was being collected, ~~captured, used, and/or stored by Defendant.~~ captured, used, and/or stored by Defendant.

~~47~~55. Nor did Ms. Wilson ever provide a written release authorizing the collection, use, or storage of her biometric identifiers or biometric information.

**FRAUDULENT CONCEALMENT AND TOLLING**

~~48~~56. Any applicable statute of limitations has been tolled by Defendant's knowing, active, and fraudulent concealment of its unlawful conduct.

~~49~~57. Defendant used security cameras and advanced video surveillance systems capable of facial recognition and capturing biometric identifiers and/or biometric without informing impacted individuals that their biometric information and/or biometric data was being collected. Plaintiffs and the Class did not discover, nor could they have discovered through the exercise of reasonable diligence, Defendant's use of this technology.

~~50~~58. As a result of Defendant's fraudulent concealment, all applicable statutes of limitations affecting the Plaintiffs and the Class members claims have been tolled.

## CLASS ALLEGATIONS

~~51~~59. **Class Definition**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of:

> All individuals who had their biometric identifiers and/or biometric information collected, captured, otherwise obtained, used, and/or stored by Defendant when visiting a Target location in the State of Illinois at any time within the applicable statute of limitations.

~~52.~~ Excluded from the Class are Defendant; Defendant's subsidiaries, parents, successors, ~~successors,~~ predecessors, and any entity in which Defendant or its parents has a controlling interest (as well as current or former employees, officers and directors); Plaintiffs' counsel and Defendant's ~~Defendant's~~ counsel; and the legal representatives, successors, and assigns of any such excluded persons.

~~53~~60. **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe there are many thousands of persons in the proposed Class.

~~54~~61. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members. Common questions of law and fact include:

a. Whether Defendant collected, captured, or otherwise obtained biometric identifiers and/or biometric information from Plaintiffs and the Class;

b. Whether Defendant stored Plaintiffs and the Class's biometric identifiers and/or biometric information;

c. Whether Defendant used Plaintiffs and the Class's biometric identifiers and/or biometric information;

d. Whether Defendant informed Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or used, and, if so, for what purpose and length of time;

e. Whether Defendant obtained a written release executed by Plaintiffs and the Class before capturing, collecting, or otherwise obtaining their biometric identifiers and/or biometric information;

f. Whether Defendant maintained a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information;

g. Whether Defendant retained Plaintiffs and the Class's biometric identifiers and/or biometric information beyond the time limits set by BIPA;

h. Whether Defendant used Plaintiffs and the Class's biometric identifiers and/or biometric information to identify them;

i. Whether Defendant profited from Plaintiffs and the Class's biometric identifiers and/or biometric information;

j. Whether Defendant disclosed, redisclosed, or otherwise disseminated Plaintiffs and the Class's biometric identifiers and/or biometric information;

k. Whether Defendant's conduct has violated BIPA;

l. Whether Defendant's BIPA violations were committed intentionally, recklessly, or negligently; and

m. Whether Plaintiffs and the Class are entitled to damages and injunctive relief.

~~55~~62.**Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class because the basis of Defendant's liability to Plaintiffs and the Class is substantially the same, and all members of the Class have suffered similar injuries as a result of the same practices alleged herein.

~~56~~63. **Fair and Adequate Representation**: Plaintiffs will fairly and adequately represent the interests of the members of the Class and has no interests antagonistic to or in conflict with those of the Class. Plaintiffs' claims are typical of the claims of the members of the Class because the basis of Defendant's liability to Plaintiffs and the Class is substantially the same, and all members of the Class have suffered similar injuries as a result of the same practices alleged herein. Further, Plaintiffs have retained qualified counsel with substantial experience in prosecuting complex litigation and class actions nationwide.

~~57~~64. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)**
**(On behalf of Plaintiffs and the Class)**

~~58~~65. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

~~59~~66. Defendant is a private entity under BIPA.

~~60~~67. BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

~~61~~68. Through Target's use of security cameras and video surveillance technology at its locations in Illinois, which captured Plaintiffs and the other Class members' facial geometry, Defendant possessed, and exercised control over, Plaintiffs and the other Class members' biometric identifiers and/or biometric information.

~~62~~69. Defendant has not made publicly available any written policy regarding the retention or permanent destruction of the biometric identifiers or biometric information that it possesses, as required by BIPA.).

~~63~~70. Upon information and belief, Defendant lacks such policies and is retaining Plaintiffs and other similarly situated individuals' biometric identifiers and/or biometric information beyond the time limits set by BIPA.

~~64~~71. Defendant's violations of BIPA, a statute that has been in effect since 2008, were intentional or in reckless disregard of the statutory requirements. Alternatively, Defendant

negligently failed to comply with BIPA.

**SECOND CAUSE OF ACTION**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)**
**(On behalf of Plaintiffs and the Class)**

~~65~~72. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

~~66~~73. Defendant is a private entity under BIPA.

~~67~~74. BIPA requires that before a private entity can collect, capture, or otherwise obtain an individual's biometrics, it must: (1) inform the person in writing that biometric identifiers or information will be collected or stored, (2) inform the person in writing of the specific purpose and length of term for which such biometrics are being collected, stored, and used, and (3) obtain a written release from the person or their legally authorized representative authorizing the collection or his or her biometrics. 740 ILCS 14/15/(b).

~~68~~75. Defendant collected, captured, otherwise obtained, and/or stored Plaintiffs and the other Class members' biometric identifiers and/or biometric information, including their facial geometry, through its use of security cameras and video surveillance technology at Target locations in Illinois.

~~69~~76. Defendant failed to inform Plaintiffs and the other Class members in writing, in advance, that their biometric identifiers and/or biometric information was being collected or stored, as required by 740 ILCS 14/15(b)(1).

~~70~~77. Defendant failed to inform Plaintiffs and the other Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information is being collected, stored, and used, as required by ILCS 14/15(b)(2).

~~71~~78. Defendant failed to obtain a written release from Plaintiffs, the other Class

members, or their authorized representatives, as required by 740 ILCS 14/15(b)(3). As such, Plaintiffs and the other Class members' privacy rights and privacy interests in their biometric identifiers and/or biometric information have been violated.

~~72~~79. Defendant's violations of BIPA, a statute that has been in effect since 2008, were intentional or in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

**THIRD CAUSE OF ACTION**
**Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(d)**
**(On behalf of Plaintiffs and the Class)**

~~73~~80. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

~~74~~81. Defendant is a private entity under BIPA.

~~75~~82. BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or disseminate biometric identifiers or biometric information" unless the subject has consented, or certain other narrow exceptions are present. 740 ILCS 14/15(d).

~~76~~83. Through its use of security cameras and video surveillance technology at Target locations in Illinois which captured Plaintiffs and the other Class members' facial geometry, Defendant is in possession of Plaintiffs and the other Class members' biometric identifiers and/or biometric information.

~~77~~84. Upon information and belief, Target is sharing Plaintiffs and other Class members' biometric identifiers and/or biometric information with third parties, including law enforcement.

~~78~~85. Neither Plaintiffs nor the other Class members have consented to the disclosure of their biometric identifiers and/or biometric information with third parties, nor do any of the statutory exceptions apply.

~~79~~86. Defendant's violations of BIPA, a statute that has been in effect since 2008, were intentional or in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of ~~herself~~themselves and the Class, respectfully request~~s~~ that the Court enter an order as follows:

a. Certifying the Class as defined above, appointing Plaintiffs as Class Representatives, and appointing the undersigned as Class Counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA;

e. Awarding statutory damages of $1,000 for each negligent violation of BIPA;

f. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorney's fees and costs;

g. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

h. Awarding such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims that can be so tried.

Dated: ~~May 30~~August 21, 2024

Respectfully Submitted,

**KAHN SWICK & FOTI, LLC**

*/s/ J. Ryan Lopatka*
J. Ryan Lopatka (Bar Number 6303849)
161 N. Clark St., Suite 1700
Chicago, IL 60601
Telephone: (312) 759-9700
Facsimile: (504) 455-1498
Email: j.lopatka@ksfcounsel.com

Kim E. Miller
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
Email: kim.miller@ksfcounsel.com

Lewis S. Kahn
Melissa H. Harris (Bar Number 33573)
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
Email: lewis.kahn@ksfcounsel.com
Email: melissa.harris@ksfcounsel.com

*Counsel for Plaintiffs and the Putative Class*

| **Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 8/21/2024 10:47:14 AM** | |
|---|---|
| **Style name:** Firm Character Level Rendering Set | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Arnold v. Target - BIPA Complaint.pdf | |
| **Modified filename:** Arnold v. Target - First Amended Complaint (8.21.2024).pdf | |
| **Changes:** | |
| Add | 189 |
| ~~Delete~~ | 155 |
| ~~Move From~~ | 30 |
| Move To | 30 |
| Table Insert | 0 |
| ~~Table Delete~~ | 0 |
| Table moves to | 0 |
| ~~Table moves from~~ | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 404 |