# EXHIBIT A

faegredrinker.com

**Justin O. Kay**
justin.kay@faegredrinker.com
+1 312 569 1381 direct

**Faegre Drinker Biddle & Reath LLP**
320 S. Canal St., Suite 3300
Chicago, Illinois 60606
+1 312 569 1000 main
+1 312 569 3000 fax

June 10, 2024

**VIA EMAIL**
J. Ryan Lopatka, Esq.
Kahn Swick & Foti, LLC
161 N. Clark St., Suite 1700
Chicago, IL 60601
j.lopatka@ksfcounsel.com

**Re:** ***Denise Arnold, Blaire Brown, and Sandre Wilson v. Target Corporation*, No. 1:24-cv-04452 (N.D. Illinois)**

Dear Mr. Lopatka,

This firm represents Target Corporation in connection with the above-referenced lawsuit. I am writing to suggest that we have a conversation about your plans regarding your clients' lawsuit. I am providing the following information in advance of that discussion to give you time to discuss it with your clients.

In the Complaint, Ms. Arnold, Ms. Brown, and Ms. Wilson allege that Target's video surveillance system uses facial recognition technology in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"). Specifically, they allege that Target has been violating BIPA by "collecting, capturing, otherwise obtaining, using, and/or storing the unique and highly sensitive biometric identifiers and biometric information, including scans of facial geometry, of thousands of individuals, without their knowledge or consent, through the use of security cameras and video surveillance systems throughout its stores in Illinois." Complaint ¶ 5.

This is not true: Target does not use video surveillance cameras that collect biometric data. While Target (like many retailers) does use video cameras to monitor its stores, Target's system collects neither facial geometry nor any other category of biometric data. Wexler Boley & Elgersma LLP and Israel David LLC recently abandoned identical claims against Target in *Arnetta Dean v. Target Corporation*, No. 2024-CH-01892 (Cir. Ct. Cook County, Ill.). The Complaint is attached hereto as **Exhibit A** and the Notice of Voluntary Dismissal is attached hereto as **Exhibit B**.

Your clients offer no facts in the Complaint (nor could they) to support their assertions. Rather, they rely on citations from the internet, but none of those is sufficient to support allegations that Target uses video cameras with facial recognition technology in violation of BIPA.

Ms. Arnold, Ms. Brown, and Ms. Wilson cite to a CNBC article discussing loss prevention studies and large retailers' efforts to improve their loss prevention measures in support of the allegation that "Target and other major retailers have been investing in theft-prevention research" and "teaming up with technology companies to develop and deploy next-generation video surveillance systems, facial-recognition cameras," and other securities technologies "superpowered by AI [artificial intelligence]." Complaint ¶ 21.

The article actually says that "Walmart, Target, Lowe's, Kroger, Macy's, CVS and other major retailers are teaming up with technology companies to develop and deploy next-generation video surveillance systems, facial-recognition cameras, license-plate and vehicle readers, autonomous security robots, radio-frequency identification (RFID) tags, smart case locks and predictive analytic software. While versions of this type of security tech have been in place for years, they're now being superpowered by AI."[1] The article does not delineate which retailers are engaged in which activity, and certainly does not say (nor could it) that Target is using facial recognition technology. The only conduct attributed directly to Target is ***funding*** a research study conducted in ***Florida*** since 2000 that "has tested hundreds of technologies in a ***simulation laboratory*** that recreates different retail environments, such as a checkout area in a big-box store, aisles in a home-improvement center or a shopping mall parking lot." (emphasis added).

They cite to a Quora post from 2019 (Complaint ¶ 23)[2] and a February 2024 article from "daily.dot" (Complaint ¶ 23),[3] itself citing to a "viral TikTok," both allegedly relaying information from former Target employees. Neither supports the assertion that Target is or was using facial recognition technology in its Illinois stores.

The Quora article is alleged to have been written by a former Target manager named Dan Bradbury. The writer asserts that he used to work at a store in Cleveland, Ohio, that allegedly "had a massive upgrade to its equipment." The post is ambiguous about whether the upgrade included facial recognition technology (which would be false) or whether the author was surmising that facial recognition was an unimplemented next step, stating, "***[e]ventually***, facial recognition will get so good that you're being watched every second you're in the store and the behavior recognition software will get to the point where you cannot steal." (emphasis added).

---

[1] Bob Woods, *How America's biggest retailers plan to use technology to catch organized retail theft*, CNBC (Aug. 1, 2023), https://www.cnbc.com/2023/07/29/how-americas-biggest-retailers-will-use-tech-to-catch-retail-theft.html.

[2] *How does Target know if you've shoplifted?* QUORA, available at https://www.quora.com/How-does-Target-know-if-you-ve-shoplifted (last visited June 7, 2024).

[3] Tangie Mitchell, *Ex-Target Worker: Why Target 'Lets' You Get Away with Shoplifting*, THE DAILY DOT (Feb. 14, 2024), https://www.dailydot.com/news/target-grand-larceny-psa/.

The TikTok is reported to have been posted by a former Target employee identified as Kaitlynd! (@reddnea) who, based on her Instagram profile, is a "Kaitlynd McQueen"[4] who lives and works in Utah. McQueen reportedly states "They use facial recognition software, so they'll get scans of your face and they'll take different pictures and angles from different cameras in the store and kind of merge and blend them together to get a clear image of who you are." "Kaitlynd" provides no support for this assertion.

They cite to an April 2024 article from PayPath (Complaint ¶ 24), which asserts that Target uses "in-store facial recognition technology."[5] In support of that assertion, the article cites to a 2011 article from *The Boston Globe*.[6] *The Boston Globe* article cites two "current or former" Target employees for the proposition that Target is using "state of the art equipment" and collaborating with other retailers to combat organized retail crime. But neither quoted individual states (nor could they) that Target was or is using facial recognition technology, nor does *The Boston Globe* article itself state (nor could it) that Target was or is using such technology. Rather, the article repeatedly references the human element involved in monitoring Target's stores—technicians watching video feeds from thousands of Target stores. The only reference in the article to "facial recognition technology" is a statement that a ***different*** retailer—CVS Caremark—was ***considering*** (in 2011) adding facial recognition to CVS Caremark's video cameras.

They cite two articles from the "*U.S. Sun*": one from July 2022 (¶ 25) and one from December 2023 (Complaint ¶ 23) that assert in nearly identical fashion, without citation or attribution to any source, that "Target's cameras use top-of-the-line, in-store facial recognition technology paired with image analytics which allow staff to keep a close eye on suspicious customers"[7] and "Target also uses facial recognition software which is 'top-of-the-line' as it has image analytics."[8] These articles cite no facts whatsoever for these assertions—it is rank speculation.

---

[4] https://www.instagram.com/reddnea/ (last visited June 7, 2024).

[5] Dan Kahan, *Why Target is the Worst Store to Shoplift From*, PAYPATH (April 25, 2024), https://www.paypath.com/context-switching-and-productivity.

[6] Jenn Abelson, "Target goes high-tech to stop increasingly savvy thieves: Technology drives Target's tough-minded antitheft operation," BOSTON GLOBE (Dec. 10, 2011), available at https://www.bostonglobe.com/metro/2011/12/10/target-goes-high-tech-stop-increasingly-savvy-thieves/UFF89UlSQ59nnS8dhidcDP/story.html.

[7] Elsa Buchanan, *NO ESCAPE Target uses 4 security hacks to make sure they catch every thief – how the retailer knows you're stealing*, U.S. SUN (July 29, 2022), https://www.the-sun.com/lifestyle/5877078/target-stores-security-hacks-shoplifting/.

[8] Ashley Palya, *CAM YOU NOT? 'Can Target be next?' ask shoppers after Rite Aid blasted over anti-theft measure that 'hit innocent customers,'* U.S. SUN (Dec. 21, 2023), https://www.the-sun.com/news/9920418/shoppers-want-target-facial-recognition-cameras-banned-rite-aid/.

They also cite to numerous articles that make ***no*** reference to facial recognition:

- a 2018 video segment from *CBS Evening News* (Complaint ¶ 24) that makes no reference to facial recognition.[9]

- a 2020 article from *Business Insider* (Complaint ¶ 24) that quotes six then-current and former Target employees in Minnesota, Michigan, Virginia, New York, and California—the article makes no mention of facial recognition.[10]

- another article from the *Daily Dot*—an article from May 2023 (Complaint ¶ 24)—that makes no mention of facial recognition technology.[11]

- another Quora post from approximately September 2023 from a person identified as "Marie Alsbergas" (Complaint ¶ 25) that references obtaining "facial photos" from security cameras but makes no mention of facial recognition technology.[12]

The only statements made ***by*** Target that are cited by Ms. Arnold, Brown, and Wilson likewise make no mention of facial recognition technology:

- a blog post[13] written by Jodie Kautt, Target's Vice President of Cybersecurity. Complaint ¶ 20. The blog post makes no reference to facial recognition technology.

- a Target press release[14] that states, "[w]e are making significant investments in strategies to prevent this from happening in our stores and protect our guests and our team." Complaint ¶ 22. The press release makes no reference to facial recognition.

---

[9] CBS Evening News, How Target retailer helps catch criminals outside its stores (Apr. 8, 2018), https://www.youtube.com/watch?v=y1HUhmawV8I.

[10] Shoshy Ciment & Mary Meisenzahl, *Target Employees Say Store Doesn't Stop All Shoplifters*, BUSINESS INSIDER (Dec. 9, 2020), https://www.businessinsider.com/target-employees-say-store-doesnt-stop-all-shoplifters-2020-12.

[11] Parks Kugle, *Target Builds Months-Long Case Against Shoplifter*, The DAILY DOT (May 12, 2023), available at https://www.dailydot.com/news/target-builds-monthslong-case-against-shoplifter/.

[12] *How does Target identify people on camera after the fact of shoplifting? They issued a warrant for me and that video shows that it was not me, yet they still arrested me.* QUORA, available at https://www.quora.com/How-does-Target-know-if-you-ve-shoplifted (last visited June 7, 2024).

[13] Jodie Kautt, *Applying Cyber Principles to Combatting Organized Retail Crime* (Aug. 29, 2023), https://tech.target.com/blog/cybersecurity-combatting-organized-retail-crime.

[14] Target Press Release, Target Corporation Reports First Quarter Earnings (May 17, 2023), *available at* https://corporate.target.com/press/release/2023/05/target-corporation-reports-first-quarter-earnings.

- an article on Target's website[15] that states, "Target has a top-rated forensic services laboratory that provides forensic examinations, and assists outside law enforcement with help on special cases." Complaint ¶ 22. The article nowhere mentions facial recognition.

- Target's privacy policy. Complaint ¶ 26. The privacy policy makes no reference to facial recognition. The Complaint asserts that the lack of disclosures in the privacy policy mean that Target has failed to disclose its collection of the facial recognition data, but fails to acknowledge the more likely explanation: that Target is not collecting facial recognition data.

* * *

As set forth above, there is no merit to the allegations in your clients' Complaint that Target uses facial recognition technology in its stores. The Complaint does not, and cannot, state a claim against Target under BIPA for the purported collection of biometric data from Target guests, and for that reason should be dismissed. Once you have had a chance to review the foregoing, please let me know a good time to connect. I would appreciate hearing back from you by Friday, June 14th.

Sincerely,

Justin O. Kay

Cc. Ambria D. Mahomes
Kim E. Miller
Lewis S. Kahn

[15] An Unexpected Career: Target's Forensic Services Laboratory (Feb 15, 2022), https://corporate.target.com/news-features/article/2012/02/an-unexpected-career-target-forensic-services-labo.

# EXHIBIT A

* 5 0 3 9 8 2 4 7 *
FILED
3/11/2024 6:24 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH01892
Calendar, 16
26771618

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ARNETTA DEAN, on behalf of herself and all others similarly situated

Plaintiff,

v.

TARGET CORPORATION,

Defendant.

2024CH01892

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT**

* 5 0 3 9 8 2 4 7 *

Plaintiff Arnetta Dean ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following Class Action Complaint against the above-captioned Defendant, Target Corporation ("Target" or "Defendant"), upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of counsel, as follows.

## INTRODUCTION

1. This class action arises out of Defendant's collection, storage, and use of Plaintiff's and the Class's biometric identifiers[1] and biometric information[2] (referred to collectively as "Biometric Data") without obtaining informed written consent or providing consumers with data retention and destruction policies.

2. Biometric Data is particularly sensitive personal information. As the Illinois Legislature has found, "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c) (Biometric Information Privacy Act or "BIPA"). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3. In recognition of these concerns over the security of individuals' Biometric Data, the Illinois Legislature enacted BIPA, which provides, among other things, that a private entity may not obtain and/or possess an individual's Biometric Data unless it: (1) informs that person

---

[1] "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

[2] "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

(or their representative) in writing that a biometric identifier or biometric information is being collected or stored;[3] (2) informs that person in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used;[4] (3) receives a written release from the person (or their representative) for the collection of his or her biometric identifier or information;[5] and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying Biometric Data.[6] Further, the entity must store, transmit, and protect from disclosure all Biometric Data using the same standard of care in the industry and in a manner at least as protective as the means used to protect other confidential and sensitive information.[7] No private entity may sell, lease, trade, or otherwise profit from a person's or customer's Biometric Data.[8] Finally, no private entity may disclose, redisclose, or otherwise disseminate a person's Biometric Data except with the subject's consent, to complete a financial transaction requested by the customer, or other narrowly prescribed situations.[9]

4. In direct violation of the first two provisions of §15 of BIPA (failure to inform regarding collection and failure to inform in writing), as alleged herein, Defendant is and has been actively collecting the Biometric Data of thousands of Illinois residents who have entered Target's stores.

---

3 740 ILCS 14/15(b)(1).

4 740 ILCS 14/15(b)(2).

5 740 ILCS 14/15(b)(3).

6 740 ILCS 14/15(a).

7 740 ILCS 14/15(e).

8 740 ILCS 14/15(c).

9 740 ILCS 14/15(d).

5. Target's stores in Illinois are outfitted with cameras and advanced video surveillance systems that – unbeknownst to customers – surreptitiously collect, possess, or otherwise obtain Biometric Data.

6. Target does not notify customers of this fact prior to store entry, nor does it obtain consent prior to collecting its customers' Biometric Data.

7. BIPA confers on Plaintiff and all other similarly situated Illinois residents a right to know about the inherent risks of Biometric Data storage, collection, and use, and a right to know how long such risks will persist.

8. Defendant failed to comply with its duties under Illinois law. Target did not and does not adequately disclose its Biometric Data collection practices to its customers, never obtained written consent from any of its customers regarding its Biometric Data practices, and never provided any data retention or destruction policies to any of its customers. Moreover, Target invaded Plaintiff's and the Class's privacy through the unauthorized collection, retention, and use of their Biometric Data.

12. Plaintiff Dean brings this action to prevent Defendant from further violating the privacy rights of Illinois residents.

13. Plaintiff also brings this action to recover statutory damages for Defendant's unauthorized collection, storage, and use of these individuals' Biometric Data.

## PARTIES

***Plaintiff Arnetta Dean***

14. Plaintiff Arnetta Dean is a citizen and resident of Illinois.

***Defendant Target Corporation***

15. Defendant Target Corporation is a corporation with its corporate headquarters located in Minneapolis, Minnesota.

## JURISDICTION AND VENUE

16. This is a class action complaint for violations of BIPA (7 40 ILCS 14/ 1, *et seq.),* seeking statutory and actual damages.

17. No federal question is presented by this complaint. Plaintiff brings this complaint solely under state law and not under federal law, and specifically not under the United States Constitution, nor any of its amendments, nor under 42 U.S.C. § 1981 or 1982, nor any other federal statute, law, rule, or regulation. Plaintiff believes and alleges that a cause of action exists under state law for the conduct complained of herein.

18. This class action is brought on behalf of only Illinois citizens residing within the State of Illinois whose biometric identifiers and information are collected and stored by Defendant.

19. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant Target because Target deliberately targeted and exploited the Illinois market by owning and operating dozens of stores in the State of Illinois — and Target collects the Biometric Data at issue from Illinois residents who shop in those stores. Plaintiff's claims therefore arise out of or relate to Target's contacts with the State of Illinois.

20. Venue is proper under 735 ILCS 5/1-108 and 2-101 of the Illinois Code of Civil Procedure, as a substantial portion of the transactions giving rise to the causes of action pleaded herein occurred in this County.

* 5 0 3 9 8 2 4 7 *

## FACTUAL ALLEGATIONS

### I. ILLINOIS'S BIOMETRIC INFORMATION PRIVACY ACT

21. In 2008, the Illinois Legislature enacted BIPA due to the "very serious need [for] protections for the citizens of Illinois when it comes to biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA makes it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15 (b).

22. To facilitate these informed notice and consent provisions, Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

23. To enforce BIPA's requirements, the statute includes a private right of action authorizing "[a]ny person aggrieved by a violation" to sue and recover for each violation damages

of $1,000 for a negligent violation, or $5,000 in the event of an intentional or reckless violation, plus attorneys' fees, costs, and appropriate injunctive relief. 740 ILCS 14/20.

24. As alleged below, Target's practice of collecting, storing, and using individuals' Biometric Data without obtaining informed written consent violates all three prongs of §15(b) of BIPA. Target's failure to provide a publicly available written policy regarding a schedule and guidelines for the retention and permanent destruction of individuals' Biometric Data also violates §15(a) of BIPA.

## II. TARGET'S BUSINESS OPERATIONS AND SURVEILLANCE SYSTEMS

25. Target is a major brick-and-mortar retailer with thousands of stores across the U.S. and as many as 74 operating stores within the state of Illinois.

26. Target uses 'top of the line' facial recognition throughout its stores.[10]

27. Every Target store is outfitted with cameras and video surveillance, and many of them have the capability to collect Biometric Data.

28. Target has an advanced system of electronic surveillance from electronic surveillance bases spread throughout the United States.[11] For at least a decade, "[Target has operated] 14 investigation centers [...] as well as two forensics labs to enhance video footage and

---

10 Ashley Palya, "CAM YOU NOT? 'Can Target be next?' ask shoppers after Rite Aid blasted over anti-theft measure that 'hit innocent customers': Will the FTC be after Target's facial recognition cameras soon?" US SUN (ONLINE) (Dec. 21, 2023) at https://www.the-sun.com/news/9920418/shoppers-want-target-facial-recognition-cameras-banned-rite-aid/.

11 Jenn Ableson, "Target goes high-tech to stop increasingly savvy thieves: Technology drives Target's tough-minded antitheft operation," BOSTON GLOBE (Dec. 10, 2011), at https://www.bostonglobe.com/metro/2011/12/10/target-goes-high-tech-stop-increasingly-savvy-thieves/UFF89U1SQ59nnS8dhidcDP/story.html.

* 5 0 3 9 8 2 4 7 *

analyze finger prints [...] [t]he retailer also operates one of the largest and most advanced networks of cameras – a system that automatically dwell too long in front of merchandise[.]"[12]

29. According to R.J. Gaites, Target's current or former investigations center leader, "[w]e are using state-of-the-art equipment to gather as much intelligence as possible, reduce business risks, and take down criminals."[13]

30. According to current or former Target employee Justin Vuylsteke, Target's system of consumer surveillance is so elaborate that even competitors have visited to "collaborate" with Target on loss prevention; officials from Walmart, Kohl's, TJX, and BJ's Wholesale have all visited Targets' investigations center to get ideas for their own retail stores with respect to monitoring consumers.[14] Per Vuylsteke, "[Target] encourages collaboration among rivals because most organized retail criminals do not discriminate – they steal from everyone."[15]

31. According to an anonymous post written on Quora by a former Target manager, "How will Target detect [shoplifters]? It's getting better: [i]ncredibly advanced behavior analysis and facial recognition software... [in stores with the technology,] [the consumer's] picture is taken EVERY time you step on and off the property. That starts to build the database. As you wander through the store, the system tracks your face. Eventually, facial recognition will get so good that you're being watched every second you're in the store[...]"[16] There are numerous instances of former Target employees detailing its facial recognition system circulating on the internet as well.

---

12 *Id.*

13 *Id.*

14 *Id.*

15 *Id.*

16 https://www.quora.com/How-does-Target-know-if-you-ve-shoplifted (last visited Mar. 4, 2024).

For example, there is an entire TikTok page of videos dedicated to consumers and ex-employees discussing Target's facial recognition system as well as concerns about it.

32. Target's security systems surreptitiously collect, possess, or otherwise obtain customers' Biometric Data without notifying them and without obtaining their consent.

## III. DEFENDANT VIOLATED ILLINOIS'S BIOMETRIC INFORMATION PRIVACY ACT

33. Target's continued use of facial recognition-enabled video surveillance systems at its Illinois stores demonstrates that Target has violated and continues to violate BIPA. The Company's system recognizes facial characteristics and features, and captures, collects, and stores Biometric Data for later use by Target.

34. Unbeknownst to the average consumer, and in direct violation of §15(b)(1) of BIPA, Target scans, collects, and stores its customers' biometric information and identifiers in an electronic database. This occurs when customers, or prospective customers, enter into Target's stores. Target engages in this practice without informing its customers in writing that it is using surveillance technology that collects and stores biometric information.

35. In direct violation of §§15(b)(2) and 15(b)(3) of BIPA, Target did not inform Plaintiff and other Illinois residents – who were subjected to video surveillance recording within its stores – of the specific purpose and length of term for which their biometrics would be collected, stored, and used, nor did they obtain a written release from any of these individuals.

36. In direct violation of §15(a) of BIPA, Target does not have written, publicly available policies identifying their retention schedules or guidelines for permanently destroying any of these biometric identifiers or biometric information.

* 5 0 3 9 8 2 4 7 *

**A. Plaintiff Dean's Experience**

37. Plaintiff Dean is an Illinois resident. She has entered Target's stores on numerous occasions during the statutory period.

38. For example, Plaintiff entered a Target store in January of 2024 in Illinois.

39. On information and belief, each Illinois Target location entered into by Plaintiff is equipped with a facial recognition-enabled video surveillance system.

40. Plaintiff did not know that Target would collect, obtain, store, and/or use her biometric identifiers or biometric information. Plaintiff did not give informed written consent to Target to collect, obtain, store, and/or use her Biometric Data, nor was Plaintiff presented with or made aware of any publicly available retention schedule regarding her Biometric Data.

41. Likewise, Plaintiff was never provided with the requisite statutory disclosures nor an opportunity to prohibit or prevent the collection, storage, or use of her unique biometric identifiers and/or biometric information.

42. By collecting, obtaining, storing, and using Plaintiff's Biometric Data without her consent, written or otherwise, Target invaded Plaintiff's statutorily protected right to privacy in her Biometric Data.

43. In direct violation of §15(b)(2) and 15(b)(3) of BIPA, Target never informed Plaintiff of the specific purpose and length of time for which their Biometric Data would be collected, stored, and used, nor did Defendant obtain a written release from Plaintiff.

44. In direct violation of §15(a) of BIPA, Target does not have written, publicly available policies identifying their retention schedules or guidelines for permanently destroying any of Plaintiff's Biometric Data.

45. Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of their unlawful conduct. Throughout the Class Period, Defendant affirmatively and fraudulently concealed their unlawful conduct.

46. Plaintiff and Class members did not discover, nor could they have discovered through the exercise of reasonable diligence, the existence of the hidden and ambiguous privacy policies and terms of use.

47. Further, the very nature of Defendant's conduct was secret and self-concealing. Defendant used advanced video management systems capable of facial recognition and capturing Biometric Data without adequately informing impacted individuals that their Biometric Data was being collected and potentially disseminated.

48. As a result of Defendant's fraudulent concealment, all applicable statutes of limitations affecting the claims of Plaintiff and the Class have been tolled.

## CLASS ALLEGATIONS

49. **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 and seeks class certification of all claims for relief herein on behalf of a class defined as follows:

> All individuals who, while residing in the State of Illinois, had their Biometric Data collected, captured, received, obtained, stored, sold, leased, traded, disclosed, redisclosed, disseminated, and/or otherwise profited from and/or used by Defendant in Illinois without their consent.

The following are excluded from the Class: (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally

adjudicated on the merits or otherwise released; and (5) the legal representatives, successors, and assigns of any such excluded persons.

50. **Numerosity**: Members of the Class are so numerous that their individual joinder is impracticable. Upon information and belief, members of the Class number in the thousands. The precise size of the Class and Class members' identities are unknown to Plaintiff at this time but may be determined through discovery. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Class is ascertainable and identifiable from Defendant's records.

51. **Typicality**: Plaintiff's claims are typical of the claims of the Class members because Plaintiff had her Biometric Data collected, used, and profited from by Target upon use of their stores, and therefore, Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class.

52. **Commonality and Predominance**: Common and well-defined questions of fact and law exist as to all members of the Class and predominate over any questions affecting only individual class members. These common legal and factual questions include, but are not limited to, the following:

a) whether Target collected or otherwise obtained Plaintiff's and the Class's Biometric Data;

b) whether Target properly informed Plaintiff and the Class that it collected, used, and stored their Biometric Data;

c) whether Target obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's Biometric Data;

d) whether Target developed and made available to the public a written policy establishing a retention schedule and guidelines for permanently destroying Biometric Data when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

e) whether Target used Plaintiff's and the Class's Biometric Data to identify them;

f) whether Target's violations of BIPA were committed intentionally, recklessly, or negligently;

g) whether Plaintiff and members of the Class sustained damages as a result of Target's activities and practices referenced above, and, if so, in what amount; and

h) whether Target profited from the activities and practices referenced above, and, if so, in what amount.

53. **Adequate Representation**: Plaintiff has retained competent counsel experienced in prosecuting complex consumer class actions. Plaintiff and her counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff and her counsel can fairly and adequately represent and protect the interests of the Class because their interests do not conflict with the interests of the Class Plaintiff seeks to represent. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

54. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Moreover, even if every member of the Class could afford to pursue

individual litigation, the Court system could not. Individual litigation of numerous cases would be unduly burdensome to the courts. Individualized litigation would also present the potential for inconsistent or contradictory judgments, and it would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with BIPA.

**COUNT I**
**Violation of 740 ILCS 14/15(a)**
**(On Behalf of Plaintiff and the Class)**

55. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

56. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant Target.

58. Section 15(a) of BIPA requires that:

> [Any] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

59. Defendant is a corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

60. Plaintiff and the Class members are individuals who had their biometrics collected and stored by Defendant. *See* 740 ILCS 14/10.

61. Defendant does not provide a written, publicly available retention schedule and guidelines for permanently destroying the Biometric Data of Plaintiff or Class members, as required by BIPA. *See* 740 ILCS 14/15(a). Defendant's failure to provide such a schedule and guidelines constitutes an independent violation of the statute.

62. Each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiff's and/or members of the Class's Biometric Data as described herein constitutes a separate violation of the statutory right of Plaintiff and each Class member to keep private this Biometric Data, as set forth in BIPA, 740 ILCS 14/1, *et seq.*

63. On behalf of herself and members of the proposed Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $5,000 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, alternatively, statutory damages of $1,000 for each and every violation pursuant to 740 ILCS 14/20(1) if the violations are found to have been committed negligently; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II**
**Violation of 740 ILCS 14/15(b)**
**(On Behalf of Plaintiff and the Class)**

64. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

65. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

66. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant Target.

67. Section 15(b) of BIPA makes it unlawful for any private entity to, among other things:

> [C]ollect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

68. Defendant is a corporation and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

69. Plaintiff and the Class members are individuals who had their biometrics collected and stored by Defendant. *See* 740 ILCS 14/10.

70. Defendant systematically collected, used, and stored Plaintiff's and Class members' Biometric Data derived from Plaintiff's and Class members' facial geometry without first obtaining the written release required by 740 ILCS 14/15(b)(3), and thereby uniformly invaded Plaintiff's and each Class ember's statutorily protected right to privacy in their biometrics. Likewise, Defendant failed to properly inform Plaintiff or members of the Class in writing that their Biometric Data was being collected, stored, or otherwise obtained, and of the

specific purpose and length of term for which those biometrics were being collected, stored, and used, as required by 740 ILCS 14/15(b)(1)-(2).

71. Plaintiff and the Class have been directly harmed by Defendant's violations of Sections 14/15(a)-(b) of BIPA. They have been deprived of their control over their valuable information and otherwise suffered monetary and non-monetary losses. By depriving Plaintiff and the Class of control over their valuable information, Defendants misappropriated the value of their biometric identifiers and/or biometric information. Based on information and belief, Defendant has profited from its unlawful conduct in several forms, including reducing shrinkage (loss of inventory by theft) and saving money on having to hire loss prevention employees or third-party vendors.

71. Each instance in which Defendant collected, stored, used, or otherwise obtained Plaintiff's and/or members of the Class's Biometric Data as described herein constitutes a separate violation of the statutory right of Plaintiff and each Class member to keep private this Biometric Data, as set forth in BIPA, 740 ILCS 14/1, *et seq.*

72. On behalf of herself and members of the proposed Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements, including BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein, and for the provision of the requisite written disclosure to consumers; (2) statutory damages of $5,000 for each and every intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or, alternatively, statutory damages of $1,000 for each and every violation pursuant to 740 ILCS 14/20(1) if the violations are found to have been committed negligently; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

* 5 0 3 9 8 2 4 7 *

## COUNT III
**Unjust Enrichment/Restitution**
**(On Behalf of Plaintiff and the Class)**

73. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

74. Defendant was unjustly enriched by its unlawful misappropriation of Plaintiff's and the Class's Biometric Information. Through its unlawful conduct, Defendant received and retained a benefit it otherwise would not have achieved. By depriving Plaintiff and the Class of control over their valuable Biometric Data, Defendant took control of and misappropriated the value of their Biometric Data. Defendant's conduct also exposed Plaintiff and the Class to a heightened risk of an invasion of their privacy.

75. There is not another adequate remedy at law. It would be unjust and unfair for Target to retain any of the benefits obtained from its unlawful misappropriation of Plaintiff's and the Class's Biometric Data. Defendant should be ordered to disgorge the proceeds that it unjustly received from the misappropriation of Plaintiff's and the Class's Biometric Data.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as Class Counsel;

B. Declaring that the actions of Defendant, as set out above, violate BIPA, 740 ILCS 14/1, *et seq.*;

C. Awarding compensatory, non-compensatory, statutory, exemplary, and punitive damages;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an order requiring that Defendant ensures its collection, storage, and usage of Biometric Data complies with BIPA;

E. Awarding Plaintiff and the Class statutory damages of $5,000 for each and every intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2), and statutory damages of $1,000 for each and every negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

F. Awarding restitution of all monies, expenses, and costs due to Plaintiff and the Class;

G. Awarding Plaintiff and the Class reasonable litigation expenses and attorneys' fees;

H. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and,

I. Awarding such other and further relief as equity and justice may require.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: March 11, 2024

Respectfully submitted,

*s/ Justin N. Boley*

Kenneth A. Wexler
Justin Boley
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
Firm ID No: 99616

Israel David*
Blake Hunter Yagman*
**ISRAEL DAVID LLC**

* 5 0 3 9 8 2 4 7 *

17 State Street, Suite 4010
New York, New York 10004
Tel.: 212-739-0622
Fax: 212-739-0628
Email: *israel.david@davidllc.com*
*blake.yagman@davidllc.com*

*Pro Hac Vice Forthcoming

*Attorneys for Plaintiff Dean and the Proposed Class*

# EXHIBIT B

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 16

FILED
4/19/2024 1:27 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH01892
Calendar, 16
27341336

FILED DATE: 4/19/2024 1:27 PM 2024CH01892

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ARNETTA DEAN, on behalf of herself and all others similarly situated

Plaintiff,

v.

TARGET CORPORATION,

Defendant.

Case No. 2024CH01892

**NOTICE OF VOLUNTARY DISMISSAL**

Pursuant to 736 ILCS 5/2-1009, Plaintiff Arnetta Dean, by her undersigned counsel, hereby provides notice of voluntary dismissal of the above-captioned action without prejudice. Plaintiff's counsel notified opposing counsel of her intention to voluntarily dismiss the action via email on April 17, 2024.

Dated: April 19, 2024

Respectfully submitted,

*s/ Justin N. Boley*

Kenneth A. Wexler
Justin Boley
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
Firm ID No: 99616

Israel David*
Blake Hunter Yagman*
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Tel.: 212-739-0622
Fax: 212-739-0628
Email: *israel.david@davidllc.com*

FILED DATE: 4/19/2024 1:27 PM 2024CH01892

*blake.yagman@davidllc.com*

*Pro Hac Vice Forthcoming

*Attorneys for Plaintiff Dean and the Proposed Class*

FILED DATE: 4/19/2024 1:27 PM 2024CH01892

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2024, a copy of the foregoing Notice of Withdrawal was filed electronically via Odyssey eFileIL. Notice of this filing will be sent by email to counsel of record by operation of the court's electronic filing system.

*/s/ Justin N. Boley*
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606