# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DENISE ARNOLD, *et al.*<br>Plaintiffs<br><br>v.<br><br>TARGET CORPORATION,<br>Defendant | No. 24 CV 4452<br><br>Judge Jeremy C. Daniel |

## ORDER

The defendant's motion to dismiss [16] is denied. The defendant shall answer the complaint by December 13, 2024. The defendant's motion for sanctions [26] is denied without prejudice.

## STATEMENT

Four Illinois residents[1] filed this putative class action against Defendant Target Corporation ("Target"), one of the largest retailers in the nation. (FAC ¶¶ 5, 13.)[2] The plaintiffs allege violations under subsections 15(a), (b), and (d) of the Illinois Biometric Privacy Act 740 ILCS 14/1, *et seq.* ("BIPA"), Counts I–III, respectively. (*See id.*) Before the Court is Target's motion to dismiss the plaintiff's first amended complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6). (R. 16.)

Enacted in 2008, "BIPA governs the collection, use, safeguarding, retention, disclosure, and disclosure of biometric data by private entities." *G.T. v. Samsung Elecs. Am. Inc.*, No. 21 CV 4976, 2024 WL 3520026, at *2 (N.D. Ill. July 24, 2024) (citing 740 ILCS 14/5).[3] The Illinois Legislature enacted BIPA to protect its citizens from the "growing" "use of biometrics." 740 ILCS 14/5(a). Under the statute, the

---

[1] The plaintiffs' full names are Denise Arnold, Blaire Brown, Sandre Wilson, and Lindsay Schumm. (*See generally* R. 15 ("FAC") ¶¶ 9–12.)

[2] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[3] As a federal court exercising diversity jurisdiction, the Court must apply Illinois substantive law and resolve the parties' dispute in the same manner as would the Illinois Supreme Court. *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021); *Webber v. Butner*, 923 F.3d 479, 482 (7th Cir. 2019). "In the absence of Illinois Supreme Court precedent," the Court must use its "best judgment to determine how that court would construe its own law." *Mashallah, Inc.*, 20 F.4th at 319. In doing so, the Court may consider the decisions of the Illinois appellate courts. *Id.*

definition of "biometric identifier" includes, as relevant here, "a scan of . . . face geometry." 740 ILCS 14/10.

Each of the plaintiffs visit their local Target stores about twice a month. (*Id.* ¶¶ 35, 41, 46, 51.)[4] Based on information and belief, they claim that the Target locations they visited were "equipped with security cameras and facial recognition-enabled video surveillance systems." (*Id.* ¶¶ 37, 42, 47, 52.) Also, upon information and belief, they allege that Target used this technology to "collect[], capture[], use[], and/or store[]" their "facial geometry." (*Id.* ¶¶ 38, 43, 48, 53.) They further assert that Target has a National Investigation Center in Minneapolis, Minnesota, where Target investigators review surveillance footage from Target stores nationwide. (*Id.* ¶ 27.) These investigators allegedly work directly with law enforcement. (*Id.*) On one occasion, one plaintiff allegedly was followed by a Target loss prevention employee while walking through the store. (*Id.* ¶ 36.) She further claims that a Target Asset Protection Operations Manager viewed her LinkedIn profile shortly after she entered the store. (*Id.*) None of the plaintiffs have been informed by Target that their biometric identifiers or biometric information was being collected, captured, used, and/or stored. (*Id.* ¶¶ 39, 44, 49, 54.) And none have ever provided Target with a written release authorizing the collection, use, or storage of their biometric identifiers or biometric information. (*Id.* ¶¶ 40, 45, 50, 55.) The complaint also claims that Target has not made publicly available any written policies containing retention schedules or guidelines for permanently destroying biometric identifiers and biometric information, as required by BIPA. (*Id.* ¶ 7.)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). Under Rule 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary," *id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); rather, the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and raise the right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Fundamentally, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson*, 614 F.3d at 404 (emphasis in original).

The Court considers Target's arguments for dismissal of each claim in turn.

---

[4] The allegations of the complaint are presumed true in considering the present motion. *Bridges v. Blackstone, Inc.*, 66 F.4th 687, 689 (7th Cir. 2023).

**Counts I and II**

To state a claim under 15(a) of BIPA, the complaint must plausibly allege that Target "possess[ed]" the plaintiffs' biometric information and failed to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers." *See* 740 ILCS 14/15(a). Although BIPA does not define possession, the Court "assumes [that] the legislature intended for [the term] to have its popularly understood meaning," or its "settled legal meaning" if one exists. *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1205 (Ill. 2019). "[P]ossession, as ordinarily understood, occurs when a person has or takes control of the subject property or holds the property at his or her disposal." *People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005) (quotation marks omitted). Additionally, to state a claim under 15(b), the complaint must plausibly allege that Target has "collect[ed], capture[d], . . . or otherwise obtain[ed]" the plaintiffs' biometric identifiers or information. 740 ILCS 14/15(b).

Here, the complaint alleges that Target possessed and collected the plaintiffs' biometric data, *i.e.*, their facial geometry, by using facial recognition-enabled video surveillance systems in its stores. (*Id.* ¶¶ 37–38, 42–43, 47–48, 52–53.) The plaintiffs also claim that Target uses the facial geometry of its patrons to track and detect theft. (*Id.* ¶¶ 22–26.) They further assert that Target lacks any retention policy. (*Id.* ¶ 7.) Accepted as true, these allegations are sufficient to state a claim under 15(a) and (b) of BIPA. *See, e.g.*, *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 749 (N.D. Ill. 2023) (concluding the plaintiff stated a possession claim where the complaint plausibly alleged that "Microsoft exercised some degree of control over access to that data"); *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 784 (N.D. Ill. 2020) (concluding the complaint stated a 15(b) claim that "allege[d] that [the defendant] obtained and stored [the plaintiff's] biometric data.").

Target argues that the Court should not accept the plaintiffs' factual allegations. (R. 18.) Target's view is that these allegations are based, not on the plaintiffs' personal knowledge, but rather on news articles and internet posts that Target asserts "do not say that Target is using facial recognition technology in Illinois, and those few that do are not enough to create the plausible inference that Target is actually doing so." (*Id.* at 6.)[5] However, the plaintiffs are not required to establish that Target is using

---

[5] Although the plaintiffs did not attach any of the articles and internet posts referenced in the complaint to the complaint, the Court is free "to consider any facts set forth in the complaint that undermine the plaintiff's claim," including "documents referenced in the pleading if they are central to the claim." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). These articles and internet posts may be considered because they are central to the plaintiffs' allegations; they are the plaintiffs' primary support for their assertion (besides Schumm's speculation about why her LinkedIn account was viewed by a Target employee, FAC ¶¶ 6, 36) that Target is using facial recognition-enabled video surveillance systems.

the technology at this early stage of litigation. Phrasing claims as pled on "information and belief" "is used by plaintiffs who have a good-faith belief in the allegations they make, but nevertheless make those allegations based on secondhand information." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). Reliance on this pleading tool is permitted and will be accepted where "[t]he grounds for the plaintiff's suspicions" "make the allegations *plausible,* even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (emphasis in original). "[T]he federal rules are flexible in this realm[.]" *Id.*

With these principles in mind, the Court notes the plaintiffs' inability to offer more detail at this stage of litigation. In a declaration, one of the plaintiffs' attorneys explains that she sought the name of Target's video surveillance equipment provider to evaluate the representations in the complaint, which Target never supplied. (R. 23 at 1.) Absent discovery, the plaintiffs' plausibly lack access to information to confirm their suspicions, and so the complaint will survive dismissal if the cited sources make it plausible that Target is using facial recognition-enabled video surveillance technology. The Court concludes that they do.

Indeed, an article Target quotes in its motion describes Target as using "in-store facial recognition technology." (*Id.* (citing FAC ¶ 27).) Coupled with the allegation that one of the plaintiff's personal social media accounts was viewed by a Target employee shortly after entering a Target store, these allegations present a story that holds together. This is not a case where the complaint "offers no basis for the allegation that [the defendant] disclosed [the plaintiff's] biometric data"; rather, it is one where the plaintiffs' supply a legitimate reason why they believe Target violated BIPA, which is sufficient to survive the motion to dismiss. *Cf. Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (rejecting 740 ILCS 14/15(d) claim based solely on "information and belief" allegations that failed to provide a "legitimate reason to suspect that [the defendant] disclosed his biometric data or that of the putative class members").

## Count III

To state a claim under 15(d) of BIPA, the complaint must plausibly allege that Target has "disclose[d], redisclose[d], or otherwise disseminate[d]" the plaintiffs' biometric identifiers. 740 ILCS 14/15(d); *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1162 (7th Cir. 2021). Here, the complaint asserts that the plaintiffs believe that Target is sharing their and the class members' biometric information with third parties, including law enforcement. (FAC ¶¶ 80–86.) The source of the plaintiffs' belief is a CBS news report providing that Target has a National Investigation Center in Minneapolis where live investigators review footage from Target stores nationwide. (*Id.* ¶ 27.) These investigators allegedly work directly with law enforcement to press

4

charges against suspected shoplifters. (*Id.*) In light of the complaint's plausible allegations that Target uses facial-recognition equipped surveillance cameras, (*id.* ¶¶ 23, 27), it is reasonable to infer that the live footage being reviewed by investigators and shared with police includes the plaintiffs' facial geometry. The plaintiffs also point to Target's privacy policy which states that it may share its customers personal information "to protect the rights, property, or safety of our company, our Guests or others." (*Id.* ¶ 28.) Together, these allegations support an inference that Target is disclosing its patrons' facial geometry to law enforcement, and state a claim for relief under 15(d) of BIPA.

Target, however, argues that the plaintiffs' allegations are "not believable" because the initial complaint stated that they "ha[d] no way" to know "if, and to whom" Target was disclosing the information to, whereas the FAC omits "if" from the sentence and says only that plaintiffs cannot know with whom Target shares its patron's identifiers. (R. 18 at 18–19.) Target urges the Court to "take Plaintiffs at their prior word" and dismiss Count III with prejudice. (*Id.* at 19.) The Court declines this invitation. "[W]hen a plaintiff files an amended complaint, the amended complaint supersedes the original complaint." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013). The sole issue presently before the Court is whether the complaint "give[s] enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. Because the allegations in the FAC support an inference that Target violated 15(d) of BIPA, Target's motion to dismiss Count III is denied.

For the foregoing reasons, the defendant's motion to dismiss is denied. Because the Court denied the defendant's motion to dismiss, the Court also denies the defendant's motion for sanctions. As discussed above, in addition to the news articles, one plaintiff alleges that she received a notification that a Target employee viewed her LinkedIn page shortly after she entered a Target store. Time will tell whether factual contentions such as this one have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. At this stage in the case, with the record not fully developed, the Court is in no position to do so.

Date: November 21, 2024

JEREMY C. DANIEL
United States District Judge