**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DENISE ARNOLD, et al.,                          )
                                                ) Case No. 24 C 4452
                Plaintiffs,                     )
                                                )
            vs.                                 )
                                                )
TARGET CORPORATION,                             ) Chicago, Illinois
                                                ) June 17, 2025
                Defendant.                      ) 10:07 A.M.

            TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS
BEFORE THE HONORABLE KERI L. HOLLEB HOTALING, Magistrate Judge

APPEARANCES:

For the Plaintiffs:        KAHN, SWICK & FOTI, LLC
                           1100 Pydras Street
                           Suite 960
                           New Orleans, Louisiana  70163
                           BY:  MS. MELISSA HOPE HARRIS
                                MR. J. RYAN LOPATKA

For the Defendant:         FAEGRE DRINKER BIDDLE & REATH LLP
                           320 South Canal Street
                           Suite 3300
                           Chicago, Illinois  60606
                           BY:  MS. ALICIA RAGSDALE OLSZESKI
                                MS. STACY MASSEY


                    PAMELA S. WARREN, CSR, RPR
                 Official Court Reporter - Retired
                    23869 N. High Ridge Drive
                  Lake Zurich, Illinois   60047
                         312.823.0001


NOTE:  Please notify of correct speaker identification.

(Proceedings held in open court:)

THE CLERK:  24 C 4452, Arnold, et al. versus Target Corporation.

Counsel, can you please state and spell your last name for the record, starting with plaintiffs's counsel first.

MS. HARRIS:  Good morning.  This is Melissa Harris, H-A-R-R-I-S, from Kahn, Swick & Foti on behalf of plaintiffs.

MR. LOPATKA:  And your Honor, this is J. Ryan Lopatka, L-O-P-A-T-K-A, also with Kahn, Swick & Foti for plaintiffs.

MS. OLSZESKI:  Good morning, your Honor.  This is Ali Olszeski, O-L-S-Z-E-S-K-I, from Faegre Drinker Biddle & Reath for defendant Target.

MS. MASSEY:  And this is Stacy Massey -- that's S-T-A-C-Y, M-A-S-S-E-Y -- representing Target, with Faegre Drinker Biddle & Reath.

THE COURT:  All right.  Is that everybody?

Okay.  Well, good morning, everybody.  I know I set this for itself on a status today.  So I know I had an entered an ESI protocol in this case about a month ago at Docket 64.  I know you were working through a number of issues relating to that the last time we had our status.

So I would love to do an update from -- starting with plaintiffs's counsel kind of on where we are.  And anything else, anything else we want to raise with the Court.  And then obviously from defense counsel as well.

MS. HARRIS: Thank you, your Honor. Yes, so the ESI protocol was entered about a month ago. We set time pursuant to the protocol. We have exchanged custodian lists. We have requested search terms from Target and have been promised those several weeks ago. And as of this morning it looks like they're -- Target has taken the position that they don't want to provide search terms and terms to finalize the custodian list, which came as a surprise to us and was not what the protocol contemplates. So that may be something that we can turn to your Honor about, but -- but so that's going (unintelligible).

You know, obviously we have gotten some documents from Target. We have got about 900 documents.

THE COURT: Okay.

MS. HARRIS: But the bulk of what we're expecting was going to come through the search term process. And we're just concerned that, you know, that if this drags on, you know, we're approaching a discovery deadline in about seven months.

So, I mean, you know the search terms -- agreement search terms can be a bit of a slog. So we would want that to continue, you know, expeditiously.

Other than that (unintelligible) that's going to (unintelligible) -- yeah, sorry.

THE COURT: All right. I don't know who is going to speak on behalf of Target. But go ahead, whoever

is -- whichever one of you is going to handle that. I would love to hear your thoughts on that and kind of us getting through -- you know, if I can discuss with you all today a way to, you know, get this process going in terms of the search terms and the custodian list, I'm all ears because I know that we do need to get all those things kind of going in order for, as plaintiffs's counsel said, to be meeting the deadlines in the case. I'd love to hear Target's position on it as well.

MS. OLSZESKI: Your Honor, yes, it is Ali Olszeski. I'm happy to provide our view. So on the ESI protocols, the parties were to exchange custodians and a general description of systems for electronic communications and ESI storage for each that is likely to contain information responsive to one or more discovery requests. That deadline was June 10th. Target complied. We provided our proposed custodians. We provided the general description of the electronic communications.

We are still waiting for plaintiffs to provide a general description of systems for electronic communications. But nonetheless, we are working very hard to keep this process moving.

We have produced almost 4000 pages of documents. Plaintiffs have produced eight pages.

We are working currently to collect the custodian data so that we can run the search terms over the custodian data. So that requires a finalized list of custodians. And so for

that reason, we have asked plaintiffs to meet and confer regarding the custodians list. And because once we -- once we propose search terms, we're on a timed deadline under the ESI protocol. So plaintiffs would have seven days -- business days, and then we would have seven business days. So to be able to meaningfully engage in that process, we -- we need to determine whether there is a burden with adding additional search terms, et cetera.

But we are full speed ahead and completely felt that the parties were working collaboratively together in this process and hope to continue to do so.

And I'm happy to answer additional questions from you, your Honor.

THE COURT: What -- just so I understand, so when I got your list of proposed custodians you sent over, that custodian data, right, this -- I don't know what devices it comes from because -- you know, if it is computer, email whatever it is, whatever that custodians electronic data is that you would run the search terms over, you're going to segregate that to only running search terms over those, correct, to segregate electronic data, I assume --

MS. OLSZESKI: Correct. We're going to -- I'm so sorry. I didn't mean to interrupt.

THE COURT: No, go ahead.

MS. OLSZESKI: We are going to -- yes, we are going to

(unintelligible) of the custodians that the entire email box be any additional data storages that they may have used into a system, a database where we can then run the search terms across that data. And we have been working to -- to process and collect the initial list of custodian data. But we received six additional proposed custodians on -- in this matter and that we still need to discuss with plaintiffs's counsel.

THE COURT: So in terms of what's left about finalizing the (unintelligible) in this, is it -- as I understand production, is it just those six (unintelligible) that all the (unintelligible) that all the (unintelligible)?

MS. OLSZESKI: I'm happy to take this. So we will meet and confer with plaintiffs's counsel. We could compromise regarding their request to add some custodians. Some we will -- we intend to explain that some don't have any kind of unique or pertinent information. And once we have that finalized list, then we can -- and process the data, we can engage in a meaningful discussion on search terms.

THE COURT: Uh-huh. Okay.

All right. Ms. Harris, is there anything you want to add then? To me it makes sense that they want to finalize the custodian list first to get all that data to their vendor or their platform or wherever all that data will be. That they will then run the agreed-upon -- once they get to that point,

the agreed-upon search terms through all of that data so that they could start to kind of have a complete set then of what would need to be (unintelligible) of potential production.

I do see why they want to cadence it by getting a finalized custodian list first so they could segregate all that custodian electronic data.

MS. HARRIS: Right. Your Honor, I would add that while I understand why they might want to have a finalized custodian list in order to begin the search process, we don't --

THE COURT: Right.

MS. HARRIS: -- understand why we can't begin the process of discussing potential search terms now contemporaneously because that process might be lengthy. Unless we're -- we haven't even met and conferred on the custodians, and then that could put us into maybe next week. And then as -- as my colleague said, you know, there is a process whereby they will propose search terms. We have got seven days to respond. There might be, you know, a requirement of looking to hit reports. We might have to engage the Court.

It doesn't make sense why we can't, at the very least, start discussing potential search terms, which I'm going to not really (unintelligible) which could still (unintelligible) end up agreeing on when we're talking about things like, you know, facial recognition and terms that -- I mean, I think we

probably know what the universe of potential terms probably looks like.  So, you know, that's our position on that.  And just make it -- there is no reason to segregate the two things.

THE COURT:  Right.

(Simultaneous colloquy.)

THE COURT:  -- finalized.

MS. HARRIS:  Right.

THE COURT:  And so I agree.  I would love for you all to be talking about both (unintelligible).  It seems like it is not much -- a little bit of (unintelligible) of the custodian list.  So I hope you guys could address all that (unintelligible) meet and confer by next week.  But I do think we can continue to talk about search terms as well.

I don't think (unintelligible).  So I understand under the terms of the ESI protocol, you know, as they describe why they don't want you to (unintelligible).  The search terms aren't going to be finalized until after the custodian (unintelligible) finalized because of the cadence (unintelligible) looks like it needs to fall under.

So I'm not disagreeing with either of you basically on that point.  I just hope you all can work together to keep this moving from -- you know, because it seems like it is going -- to me, you know, fairly well so far, right?  Fairly well.  But I understand the (unintelligible).  So I do think it is (unintelligible) both tracks (unintelligible) the custodian

list and be talking about search terms as well. And hopefully you all can come to an agreement to both of those things without, you know, further court intervention.

Okay. Is there anything else that we need to talk about today? So I appreciate the update.

MS. OLSZESKI: Nothing from Target's --

MS. HARRIS: (Unintelligible) --

Ms. OLSZESKI: -- perspective, your Honor.

THE COURT: Nothing else from Target I heard.

And from plaintiff?

MS. HARRIS: No, nothing else from plaintiff.

THE COURT: Okay. All right. Well, I appreciate that. I know we also were talking about another separate track, right, which is the settlement track. And so I know part of all of this is, you know, I want to make sure that we include sort of things in line about how that's going as well in terms of discovery, right? So if we want to still have any type of settlement discussions be kept on track too. Okay?

MS. HARRIS: Yes.

MS. OLSZESKI: Yes, your Honor, that makes sense from our perspective.

THE COURT: Okay. All right. Great.

All right. So I think what we should do -- you tell me. Do these telephonic status hearings -- I mean, does that help you? Does it work where we can kind of talk through

things?  Would you rather do it tele- -- would you rather do a joint status report in writing next?  You tell me.

But I like to have a date on the calendar for when I will get a status update again for you all.

Probably, Rosa, I'm looking like maybe around 50, 65 days out, something like that, Rosa.

THE CLERK:  Should we set it for a status hearing, Judge, or --

THE COURT:  Well, that's up to the parties.

Do you think a telephonic status hearing?  Do you like that, which I'm totally fine doing that.  I like hearing from the parties.  Or we could do a joint status report in writing. What would the parties prefer here?

MS. HARRIS:  I think the plaintiff is fine with telephonic.  I suspect if anything important -- I mean, obviously if anything important comes up or we reach an impasse on search terms or whatever, then, you know, we'll be in touch regarding that (unintelligible) telephonic purpose is fine.

THE COURT:  Okay.  And then what I will do is hear -- if there are any motions that are necessary at all, right, for the Court to address related to discovery, if we have a telephonic hearing set, we could always argue those motions at that time.  So I would just ask that they be, you know, filed out -- as far enough in advance of the telephonic status hearings so that we could address them at that time.  Sometimes

parties like that too. I hope we don't have to do that here, right, but that's one of the reasons I find these telephonic hearings helpful.

Target's counsel, do you have a position on that?

MS. OLSZESKI: Your Honor, we are happy to do a telephonic status conference. And your request regarding any motions completely makes sense from our perspective.

THE COURT: Okay. Perfect. All right.

So Rosa, for telephonic status, do we have something about 50 days out or so?

THE CLERK: Sure. How about Wednesday, August 6th at 11 o'clock.

THE COURT: That works for both parties?

MS. OLSZESKI: Yes, your Honor, it works for Target.

MS. HARRIS: It works for plaintiffs as well.

THE COURT: Okay. All right. So we'll set our next telephonic status for August the 6th at 11:00 A.M.

And just as I said, if there is anything we need to address, you know, that date to file your -- if there are any motions I would have to address, you file those far enough out, you know, so that someone could submit a response, right, if we needed to argue that at that hearing.

But like I said, hopefully -- I'm -- hopefully you all will get through at least these first issues about custodian lists and the search terms (unintelligible) and production

going out (unintelligible) hearing.  But if you need to come to me about anything (unintelligible).  Okay?

MS. HARRIS:  Thank you, your Honor.

MS. OLSZESKI:  Yes, your Honor.

MS. HARRIS:  Thank you so much.

THE COURT:  All right.  You guys have a good day, okay?

MS. OLSZESKI:  You too.

MS. HARRIS:  You too, your Honor.

THE COURT:  All right.  Bye-bye.

MS. OLSZESKI:  Thank you.

MS. HARRIS:  Bye.

(Which concluded the proceedings.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.

*/s/Pamela S. Warren*                 June 17, 2025
Official Court Reporter - Retired              Date
United States District Court
Northern District of Illinois
Eastern Division